# Norfolk & W. Ry. Co. v. Hensley's Administrator.

(Decided Jan. 16, 1934.)

W. R. McCOY, F. M. RIVINUS and HOLT & HOLT for appellant.
J. B. CLARK and A. J. KIRK for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

In February, 1931, Hodaviah Hensley, while walking along State Highway 8 or United States Highway 52 in West Virginia, was struck by an automobile driven by Henry Conn and sustained injuries resulting in his death.

Sam Hensley qualified as administrator of his estate and as such instituted this action against the Norfolk & Western Railway Company, alleging that his decedent's death was caused by its negligence and the concurrent negligence of Henry Conn. The negligence alleged against the railway company is that at the time and prior to the accident it maintained an electric light upon its pump-house which shone with such brilliance and power on and over the highway as to blind motorists approaching it and so interfered with their vision as to render them unable to see persons or vehicles on the highway on the opposite side of the light. While

348

the petition alleges that Conn negligently and carelessly ran his automobile against deceased and produced his death, it further alleges that the light so maintained by the railway company was so bright that it blinded him.

In addition to a denial of negligence upon its part, the railway company affirmatively pleaded contributory negligence upon part of decedent, and further that the injuries of decedent were caused solely by the negligence of Henry Conn in the operation of his automobile.

While no reply or order treating the affirmative allegations of the answer as controverted of record is found in the record here, the case was practiced below as though it had been, and it will be so treated here. Trial before a jury resulted in a verdict in favor of the administrator for $2,900, and the railway company is appealing. The sole ground urged for reversal is that the company was entitled to a peremptory instruction to find for it.

The highway runs between appellant's railroad tracks and Tug river. Appellant has its pump-house between the highway and the river. The pump-house is on a precipitous embankment, 23 or 24 feet from the paved portion of the highway. There is a suspended walkway leading from the roadside to the front door of the pump-house. A beam runs through the building near the top, and suspended from this beam which projects about 3 feet above the door is an electric light. It is in evidence that this light was so placed to light up the front door or walkway for the protection of the company's employees. A blueprint filed by a civil engineer showing the surroundings near the pump-house shows the light to be a fraction over 23 feet from the nearest portion of the paved highway and about 7½ feet higher than the surface thereof. It was equipped at the time with a 50-watt bulb. While it is alleged in the petition that the light was not equipped with a hood and some of appellee's witnesses so testified, it is testified to by a number of appellant's witnesses that there is a wooden hood attached to the beam which hangs down below the light and between it and the highway so as to prevent its rays from falling directly thereon. The accident occurred about 10 o'clock at night while deceased and two companions were walking along the highway near the pump-house. Henry Conn, accompanied by Green Ward and Ken Kirk, was driving the automobile. Conn testified that he did not see Hensley until the auto-

mobile had passed through the light from the pump-house and was within about 20 feet of him; that he swerved to the right in an attempt to avoid striking him, and his evidence indicates that he would have done so except for the fact that Hensley walked over to the right and attempted to push his companions out of the path of the automobile. He testified that he was driving at the rate of about 35 or 40 miles per hour and did not sound his horn when approaching or passing through the pump-house light. While it would be impracticable to review in detail the evidence of all the witnesses, we quote excerpts from the direct and cross-examination of Conn relating to the effect the light had upon him:

"Q. 22. At the time you ran against Hodaviah Hensley what effect, if any, did this light in the road have on you? A. I don't know—I hit the boy beyond the light.

"Q. 23. How far beyond? A. I don't know, 10 or 12 feet, maybe 20—I don't know exactly. * * *

"Q. 26. In passing through the light what effect, if any, did it have on the lights on your car? A. Well I don't exactly know—anyone driving on the road not expecting any thing, don't know all about anything all at once.

"Q. 27. Could you see through the light there? A. No, if I could have saw in front I would not have had the accident.

"Q. 28. How far could you see in front of you as you passed through the light place, Henry? What effect, if any, did the light place, in the road have on your car lights, as to whether or not you could see? A. Well I never saw.

"Q. 29. And that was the reason you hit the boy? A. Certainly if I had saw him, I wouldn't have hit him. * * *

"Q. 36. Tell the jury whether or not, Henry, when you came into this light, the light shining out from the pump-house interfered with the lights of your car to any extent? Or to such an extent that it prevented you from seeing beyond the light to where the deceased boy was? A. Well I suppose it hindered me some, but anything done like that—

done in a dash and I don't know what was the cause of it. * * *

"Q. 41. If the light hadn't shone out across the road, tell the jury whether or not your light would have shone sufficiently up the road so you could have seen the deceased man before you struck him? A. Well I was driving on and not expecting to see anybody and it was a dark night and I drove into the light before I saw the boys, and there was three boys walking the road side by side, and the one that got killed wouldn't have got hit if he hadn't tried to push the other two boys out of the way.

"Q. 42. Could you have seen them if the light had not been shining across the road there from the lights of your car? A. I told you I don't know whether I could have or not. * * *

"Q. 45. How far in front could you see any objects from your headlights when not interfered with by other lights? A. I don't know, 50 or 60 feet."

On cross-examination he testified that he had often passed this pump-house in the nighttime and the light never interfered with his driving; that it is no more than the light from a passing automobile.

Green Ward testified that he paid no particular attention to the light on the night of the accident; that he had driven an automobile by the pump-house a number of times after dark, and while he was conscious that the light was there, he never noticed that it interfered with his driving, and indicated that it did not interfere like the headlights on an automobile. The evidence of Ken Kirk was in effect the same as that of Ward. One witness testified that this light did interfere with the view ahead.

Without going into further review of the evidence for appellee or any of the evidence for appellant, it may be said that the preponderating weight of evidence tends to establish that the light in controversy does not materially interfere with the view of motorists or others passing along the highway, and apart from the evidence on this question, common knowledge and experience teaches that it could not have so interfered, since a 50-

watt bulb is below the average candle power of bulbs ordinarily used for residential lighting.

The evidence of Henry Conn establishes beyond controversy that he was very negligent in the operation of his automobile. From a reading of the quoted excerpt from his evidence the conclusion is inevitable that the light from appellant's pump-house did not interfere with him in the operation of his automobile. He testified that his headlights were sufficient to reveal objects 50 or 60 feet ahead and he was driving 35 or 40 miles per hour; therefore, if there had been no light on the pump-house, the lights on his automobile would not have revealed Hensley and his companions until it was within 50 or 60 feet of them, and taking the most favorable figures it would have traveled this distance in a little more than a second. If the lights blinded him, the evidence shows that he went ahead without regard for his own safety or for the safety of others upon the highway, since he did not slacken the speed of his automobile, get it under control, or give a warning of his approach. He violated three or four statutes of both West Virginia and Kentucky pertaining to the lighting of automobiles and the proper operation thereof with regard to speed and signals.

In the light of the evidence and the natural deductions and inferences arising therefrom, there is no room for a difference of opinion among men of ordinary intelligence as to whose negligence brought about the accident which resulted in injuries for which recovery is sought. There is little, if in fact even a scintilla of evidence to indicate any negligence upon part of appellant in maintaining the light as it did; and there is an utter absence of showing that the negligence complained of in the petition was the proximate cause of decedent's injuries, or that it in any measure contributed to such injuries. On the other hand, the overwhelming weight of the evidence points directly to the negligence of the driver of the automobile as the sole cause of the accident which resulted in the injury.

To hold appellant liable in damages it was incumbent upon appellee to show that the negligence complained of was the proximate cause of the injuries. Mazzani v. Keyes, 200 Ky. 783, 255 S. W. 695; Combs v. Southern Bell Tel. & Tel. Co., 238 Ky. 341, 38 S. W. (2d) 3; Wright v. L. C. Powers & Sons, 238 Ky. 572, 38

S. W. (2d) 465. And it has been held by this court in a number of cases that the "proximate cause" of an injury is that which in continuous sequence, and unbroken by any independent intervening responsible cause or agency, produces the injury and without which it would not have occurred. Wright v. Powers & Sons, supra; Park Circuit & Realty Co. v. Ringo's Guardian, 242 Ky. 255, 46 S. W. (2d) 106.

Applying the standards set by the foregoing authorities to the proven facts and circumstances, it is clearly manifest that appellee failed to make out a case against appellant; therefore, it follows that the court erred in not sustaining appellant's motion for a peremptory instruction to find for it.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.