# Miles v. Southeastern Motor Truck Lines, Inc.

June 25, 1943.

Gordon, Gordon & Moore and E. M. Nichols for appellant.

Trimble & Trimble and H. W. Linton for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

Appellee, a corporation, brought this action in the Christian circuit court against the Tradewater Grocery Company, J. T. Gooch, trustee in bankruptcy for Tradewater Grocery Company, and J. P. Miles, to recover of

158

them for the destruction and loss of a motor truck and trailer and the contents thereof composed of various kinds of merchandise which appellee was transporting as a common carrier for various and sundry third parties.

The facts out of which this controversy arose are set out in the petition. Appellee alleged that it was a corporation under the laws of the State of Tennessee authorized to contract and carry freight in motor vehicles and to operate as a common carrier; that the Tradewater Grocery Company is a corporation and on July 19, 1938, it filed its petition in bankruptcy in the District Court of the United States for the Western District of Kentucky, and was thereafter adjudicated a bankrupt and by proper orders of the said court the defendant J. T. Gooch was appointed trustee for said bankrupt and thereupon entered upon the performance of his duties as such and has ever since and is now acting as said trustee, and that the defendant J. P. Miles was an employee, agent and servant of Tradewater Grocery Company and J. T. Gooch, trustee.

It is alleged further that on or about December 30, 1938, about four miles north of Hopkinsville, Kentucky, on highway 41 in Christian county, appellee was operating a motor truck with a trailer attached thereto, both of which belonged to appellee, and on that occasion the trailer was loaded with various articles of merchandise, the property of third parties, and which appellee was transporting as a common carrier for such third parties, and under contract of carriage by reason of its duties and liabilities as a common carrier it was liable to said third parties for the preservation, safety and delivery in good condition all of said merchandise to the respective destinations contracted for; that on said occasion the truck and trailer with its contents of merchandise were proceeding southwardly on said highway toward Hopkinsville, Kentucky, and that the Tradewater Grocery Company and J. T. Gooch, trustee, were causing to be operated at the same time and place an automobile and that J. P. Miles was then and there in charge of and operating said automobile, and in the operation of which he was acting as the agent, servant and employee and under the direction and control of Tradewater Grocery Company and of J. T. Gooch as trustee thereof and in the prosecution of the business of Tradewater Grocery Com-

pany and its trustee, and on said occasion Miles so negligently and carelessly operated his said automobile that he caused plaintiff's truck and trailer with its contents of merchandise to upset and overturn on the highway and to catch fire, resulting in the total loss and destruction of the truck and trailer and said merchandise, all of which were caused by the negligence and carelessness of defendant Miles and his employers, grocery company, and Gooch. It is further stated that the truck and trailer were of the value of $1,150 and that the contents of the trailer, the merchandise, was of the value of $1,558.05, and that plaintiff was liable to the said third parties for all such damage and loss of the contents of the trailer and that it, plaintiff, has paid said third parties such damages in the total sum of $1,558.05 and prayed to recover of defendants the total amount of $2,708.05.

The defendants filed their joint and separate answers traversing the allegations of the petition, and pleaded contributory negligence on the part of the driver of the truck of appellee. The plea of contributory negligence was controverted by reply thus completing the issues, and a trial had before a jury, and at the close of the evidence defendants moved the court to dismiss the case as against the Tradewater Grocery Company and J. T. Gooch, trustee, which motion the court sustained and dismissed the action against them and the case was proceeded with as against J. P. Miles, resulting in a jury verdict and judgment thereon in the sum of $1,150 for the loss of the motor truck and trailer, and the sum of $1,558.05 for the merchandise, or the total amount of $2,708.05, the full amount sued for. Miles has appealed.

A reversal of the judgment is urged upon various grounds, among which is that, conceding that the negligence of appellant Miles was the proximate cause of the truck and trailer overturning, yet such negligence was not the proximate cause of the fire which resulted from an independent, unrelated, efficient act of a third person over whom appellant had no control and for whose act he was not liable and, therefore, the trial court should have directed a verdict for appellant; or, should have given instruction "O" offered by appellant stating, in substance, that even though the truck was caused to overturn by the negligent act of appellant, appellee could not recover for the damages caused by the fire if the fire resulted from an independent, careless or wilful act of some third party over whom appellant had no control.

The accident happened on a hill or grade at about 9 p. m. After the truck overturned gasoline spilled from its tanks and ran down the surface of the highway and on the shoulders thereof twenty or twenty-five feet. In about twenty minutes, or according to the evidence of some of the witnesses, between twenty and forty minutes after the truck overturned, the gasoline caught fire about twenty feet from the truck and burned along the highway to the truck and trailer with the result stated above. Before the gasoline caught fire a large crowd of people had gathered at the scene of the accident and it appears that they were cautioned not to smoke, strike matches, etc., because of the presence of the gasoline. Several witnesses testified that they saw the fire start in the gasoline on the highway about twenty feet south of the truck, but only one witness, Wendell Wilson, claimed to know how it occurred. He was asked and answered these questions:

"Q. Did you see it catch afire? A. Yes, sir.

"Q. What did you see? A. There were three men at that time at the front of the truck. I took my light up to go back to the truck, my wrecker was on the far side, one of the three was smoking, and dropped a cigarette, I can't say it was a cigarette, but I saw the light from his mouth.

"Q. What happened? A. It flamed up.

"Q. What did the three men do? A. They got back.

"Q. Do you know who they were? A. No, sir.

"Q. Did you see them again that night? A. I can't say that I did."

This is the only evidence tending to show the cause of the gasoline catching on fire. We will refer to this later on in our discussion of the question of whether or not the act of the person in throwing the match or cigarette into the gasoline was done wilfully and maliciously, or carelessly and negligently without any intention of causing a fire.

Appellant refers us to the definition of "proximate cause" as that cause "which in continuous sequence, and unbroken by any independent, intervening responsible cause or agency, produces the injury and without which it would not have occurred." Citing Norfolk & W. R.

Co. v. Hensley's Adm'r, 252 Ky. 347, 67 S.W. (2d) 510, 512, and other cases of a like or similar nature. He also predicates his argument upon Morton's Adm'r v. Kentucky-Tenn. Light & Power Co., 282 Ky. 174, 138 S.W. (2d) 345, 349, wherein it is said:

> "Where no danger exists in a condition which merely made it possible for an injury to happen through some independent, unrelated and efficient cause, the condition cannot be held as the proximate cause."

That rule is sound and finds support in numerous authorities and furnished one of the crucial questions in this case; namely, did a dangerous condition exist before the happening of the intervening cause; i. e., the act of the third party in setting the gasoline on fire? It is admitted in brief of appellee that the act of the unknown smoker in carelessly throwing his lighted tobacco or match on the highway was what is generally known in legal parlance as an "intervening cause" but it is insisted that while the act was what might be termed an "intervening cause" yet it was not a *superseding* cause such as to break the chain of causation so as to relieve appellant of the consequences of his original negligence, and in support thereof appellee cites and relies upon the case of Watson v. Kentucky & Ind. Bridge & R. Co., etc., 137 Ky. 619, 126 S.W. 146, 150, 129 S.W. 341, and certain other authorities. The facts of the case, supra, as recited in that opinion are, in substance, that while the bridge and railway company was transporting a tank filled with gasoline through the city of Louisville it was derailed, thereby causing the gasoline to escape and flow in large quantities on the street and into the gutters; that from the gasoline thus flowing and standing in pools in and about the streets there arose and spread over the neighborhood of that section and into the houses of the residents thereof great quantities of explosive and combustible gas which, three or four hours after the derailment of the tank car, exploded with force from contact with a lighted match thrown on the street by one Chas. Duerr who claimed to have used it in lighting a cigar. The explosion almost wrecked the house of Watson, and he also sustained severe personal injuries. Watson sued the tank line company, owner of the tank, and the railway and bridge company which was transporting it over its tracks at the time it was derailed, alleging that his damages were caused by the negligence of the de-

fendants in wrecking the tank and spilling the gasoline. In that action, as here, the defendants defended upon the ground that the wrecking of the tank car and spilling the gasoline was not the proximate cause of the explosion resulting in the damages sued for and that the proximate cause of the explosion was the lighting of the match by Duerr which was an independent, unrelated, efficient act of a third person for which the defendants were not liable. The trial court sustained that defense and peremptorily instructed the jury to find a verdict for the defendants, but on appeal to this court the judgment was reversed. After stating the facts and reviewing the pertinent parts of the evidence, the court said:

"The lighting of the match by Duerr having resulted in the explosion, the question is, was that act merely a contributing cause, or the efficient and, therefore, proximate cause of appellant's injuries? The question of proximate cause is a question for the jury. In holding that Duerr in lighting or throwing the match acted maliciously or with intent to cause the explosion, the trial court invaded the province of the jury. There was, it is true, evidence tending to prove that the act was wanton or malicious, but also evidence conducing to prove that it was inadvertently or negligently done by Duerr. It was therefore for the jury and not the court to determine from all the evidence whether the lighting of the match was done by Duerr inadvertently or negligently, or whether it was a wanton and malicious act. As said in Milwaukee [& St. P.] R. Co. v. Kellogg, 94 U.S. 469, 24 L.Ed. 256: 'The true rule is that what is the proximate cause of the injury is ordinarily a question for the jury. It is not a question of science or legal knowledge. It is to be determined as a fact in view of the circumstances of fact attending it.' Snydor v. Arnold, 122 Ky. 557, 92 S.W. 289, 28 Ky. Law Rep. [1250], 1252. In Thompson on Negligence, sec. 161, it is said: 'On principle, the rule must be here, as in other cases, that, before the judge can take the question away from the jury and determine it himself, the facts must not only be undisputed, but the inference to be drawn from those facts must be such that fair-minded men ought not to differ about them. It must be concluded that this is so, when it is considered that proximate cause is a cause which would

probably, according to the experience of mankind, lead to the event which happened, and that remote cause is a cause which would not, according to such experience, lead to such an event. Now, whether a given cause will probably lead to a given result is plainly to be determined by the average experience of mankind; that is, by a jury rather than by a legal scholar on the bench.' No better statement of the law of proximate cause can be given than is found in 21 Am. & Eng. Ency. of Law (2d Ed.) 490, quoted with approval in Louisville Home Tel. Co. v. Gasper, 123 Ky. 128, 93 S.W. 1057, 29 Ky. Law Rep. 578, 9 L.R.A.,N.S., 548: 'It is well settled that the mere fact that there have been intervening causes between the defendant's negligence and the plaintiff's injuries is not sufficient in law to relieve the former from liability; that is to say, the plaintiff's injuries may yet be natural and proximate in law, although between the defendant's negligence and the injuries other causes or conditions, or agencies, may have operated, and, when this is the case, the defendant is liable. So the defendant is clearly responsible where the intervening causes, acts, or conditions were set in motion by his earlier negligence, or naturally induced by such wrongful act or omission, or even, it is generally held, if the intervening acts or conditions were of a nature the happening of which was reasonably to have been anticipated, though they may have been acts of the plaintiff himself. An act or omission may yet be negligent and of a nature to charge a defendant with liability, although no injuries would have been sustained but for some intervening cause, if the occurrence of the latter might have been anticipated. * * * A proximate cause is that cause which naturally led to and which might have been expected to produce the result. * * * The connection of cause and effect must be established. It is also a principle well settled that when an injury is caused by two causes concurring to produce the result, for one of which the defendant is responsible, and not for the other, the defendant cannot escape responsibility. One is liable for an injury caused by the concurring negligence of himself and another to the same extent as for one caused entirely by his own negligence.' Black's Law & Practice, sec. 21; Thompson on Neg-

ligence, secs. 47-52; Whitaker's Smith on Negligence, 27; 29 Cyc. 488-502.

"If the presence on Madison street in the city of Louisville of the great volume of loose gas that arose from the escaping gasoline was caused by the negligence of the appellee Bridge & Railroad Company, it seems to us that the probable consequences of its coming in contact with fire and causing an explosion was too plain a proposition to admit of doubt. Indeed, it was most probable that some one would strike a match to light a cigar or for other purposes in the midst of the gas. In our opinion, therefore, the act of one lighting and throwing a match under such circumstances cannot be said to be the efficient cause of the explosion. It did not of itself produce the explosion, nor could it have done so without the assistance and contribution resulting from the primary negligence, if there was such negligence, on the part of the appellee Bridge & Railroad Company in furnishing the presence of the gas in the street. This conclusion, however, rests upon the theory that Duerr inadvertently or negligently lighted and threw the match in the gas. This view of the case is sustained by the following leading cases, all decided by this court: Snydor v. Arnold, 122 Ky. 557, 92 S.W. 289, 28 Ky. Law Rep. [1250], 1252; Louisville Gas Co. v. Gutenkuntz, 82 Ky. 432; Whitman-McNamara Tobacco Co. v. Warren, 66 S.W. 609, 23 Ky. Law Rep. 2120; Louisville Home Telephone Co. v. Gasper, 123 Ky. 128, 93 S.W. 1057, 29 Ky. Law Rep. 578, 9 L. R. A., N. S., 548. These cases supra are, indeed, in point of fact and principle so analogous to the case under consideration as to completely control its determination, and to render further discussion of it unnecessary.

"If, however, the act of Duerr in lighting the match and throwing it into the vapor or gas arising from the gasoline was malicious, and done for the purpose of causing the explosion, we do not think appellees would be responsible, for while the appellee Bridge & Railroad Company's negligence may have been the efficient cause of the presence of the gas in the street, and it should have understood enough of the consequences thereof to have foreseen that an explosion was likely to result from the

inadvertent or negligent lighting of a match by some person who was ignorant of the presence of the gas or of the effect of lighting or throwing a match in it, it could not have foreseen or deemed it probable that one would maliciously or wantonly do such an act for the evil purpose of producing the explosion. Therefore, if the act of Duerr was malicious, we quite agree with the trial court that it was one which the appellee could not reasonably have anticipated or guarded against, and in such case the act of Duerr, and not the primary negligence of the appellee Bridge & Railroad Company, in any of the particulars charged, was the efficient or proximate cause of appellant's injuries. The mere fact that the concurrent cause or intervening act was unforeseen will not relieve the defendant guilty of the primary negligence from liability, but if the intervening agency is something so unexpected or extraordinary as that he could not or ought not to have anticipated it, he will not be liable, and certainly he is not bound to anticipate the criminal acts of others by which damage is inflicted and hence is not liable therefor. 29 Cyc. 501-512; Sofield v. Sommers, 22 Fed. Cas. page 769, No. 13,157, 9 Ben. 526; Andrews v. Kinsel, 114 Ga. 390, 40 S.E. 300, 88 Am. St.Rep. 25.''

In the present case there is no evidence tending to show that the unknown person who threw the match or cigarette on the street resulting in the fire did so maliciously or with any intention of causing a fire, but was an inadvertent or negligent act. In fact, it is not claimed by anyone that it was done wilfully or maliciously.

Appellant, in his reply brief, claims that the Watson case is not applicable and attempts to distinguish it, but we cannot accept the offered distinction. We are unable to see any difference in the facts and circumstances between that case and the present case, nor do we see any reason why the same reasoning and principles upon which the case was determined are not applicable to the present case. In addition to the Watson case many other cases are cited wherein like or similar questions were involved and all of which, or many of which, refer with approval to the Watson case. In one of the cases cited, United States Natural Gas Co. v. Hicks, 134 Ky. 12, 119 S.W. 166, 23 L.R.A.,N.S., 249, 135 Am.St.Rep. 407, it is held that a person may be guilty of negligence

in some circumstances and under a particular state of facts in creating a dangerous situation although the imprudent and unauthorized act of another may be necessary to realize the mischief to which the unlawful act or negligence of defendant has given occasion. See also, Kentucky Independent Oil Co. v. Schnitzler, 208 Ky. 507, 271 S.W. 570, 39 A.L.R. 979; Standard Elkhorn Coal Co. v. Davis, 222 Ky. 773, 2 S.W. (2d) 670; Cincinnati, N. O. & T. P. R. Co. v. Padgett, 158 Ky. 301, 164 S.W. 971; Riley v. Louisville & N. R. Co., 231 Ky. 564, 21 S.W. (2d) 990; Denker Transfer Co. v. Pugh, 162 Ky. 818, 173 S.W. 139. See also, volume 2 of the Restatement of the Law of Torts, secs. 433, 435 and 447, which latter section states the doctrine enunciated in the Watson case. Appellant cites numerous authorities in support of his contention of non-liability and points out certain isolated parts or excerpts in those opinions to the effect that where there is an intervening and direct cause a prior and remote cause cannot be made the basis for recovery of damages, as was held in Fiechter v. City of Corbin, 254 Ky. 178, 71. S.W. (2d) 423, and Newton v. Weatherby's Adm'x, 287 Ky. 400, 153 S.W. (2d) 947. A careful analysis of those opinions discloses a state of facts different from the ones involved in the present case, and what was said in those opinions with respect to prior and remote causes, etc., was based upon the facts of the particular case under consideration, rather than being intended as a general proposition of law applicable to all state of facts and circumstances. To reverse the judgment on this point would necessarily result in overruling not only the Watson case but many other judicial opinions, and be in direct conflict with much that has been written by many noted text writers. It is our conclusion, therefore, that the court did not err in overruling appellant's motion for a directed verdict.

Another ground relied on for reversal of the judgment is that the evidence of Clyde G. Foster, the only witness who testified for appellee as to the value of the property destroyed—the truck and trailer and its contents of merchandise—was incompetent and its admission was prejudicial to appellant for these reasons: (1) His evidence as to the value of the merchandise was based not on his own knowledge of either the merchandise or its value, but entirely upon hearsay; (2) his evidence does not show that he was qualified to express an opinion as to the value of the truck and trailer, or

either of them; and (3) the evidence as to the sums paid claimants is incompetent and prejudicial under the circumstances. There is also some controversy as to the measure of damages with respect to the merchandise—whether the measure of damages is the market value of the merchandise, or the sums paid by appellee to the owners thereof in settlement of their claims. In this and like cases the competency or incompetency of evidence depends largely upon the measure of damages, since evidence that might be competent or incompetent when applied to one measure of damage and not so as to another. We will first determine the measure of damages. It is the well settled law of this and all other jurisdictions, so far as we know, that a common carrier is responsible to the owners for property injured or destroyed while in its possession as such carrier, unless such injury or destruction is brought about by the act of God. The question of negligence or no negligence of the carrier is not material, since its liability is that of an insurer, with the exception above noted. There is no dispute between the parties about the measure of damages as to the truck and trailer. It is agreed that the measure of damages as to these vehicles was the market value of same immediately before the fire and immediately after the fire.

It is appellee's contention that since its action is predicated upon an implied contract of indemnity, its damages are not predicated upon the value of the merchandise but upon its liability to its customers because of the destruction of the merchandise, and hence the measure of damages as between it and appellant is the amount it paid its customers, consignors, consignees, etc., in settlement of their claims, if such settlements were made honestly and in good faith. In support of this contention appellee cites and quotes from 31 C.J. p. 447, as follows:

"An implied contract of indemnity also arises in favor of a person who without any fault on his part is exposed to liability and compelled to pay damages on account of the negligence or tortious act of another, the former having a right of action against the latter for indemnity, provided they are not joint tort-feasors in such sense as to prevent recovery. This right of indemnity is based upon the principle that every one is responsible for his own negligence, and if another person has been com-

pelled by the judgment of a court having jurisdiction to pay the damages which ought to have been paid by the wrongdoer they may be recovered from him. It exists independently of statute, and whether or not contractural relations exist between the parties, and whether or not the negligent person owed the other a special or particular legal duty not to be negligent.''

In regard to what is said in the above excerpt with respect to one being compelled by a judgment of the court to pay the damages, we do not construe that to mean that in all cases and circumstances, particularly like the one here involved, one who is entitled to indemnity must first obtain a judgment of the court before he has the right to sue for indemnity; or, at least that rule is not applicable to such cases in this jurisdiction. Appellee, being liable to the various third parties for their merchandise destroyed, had the legal right to make an honest and good faith settlement with them without becoming involved in litigation. Luton Mining Co. v. Louisville & N. R. Co., 276 Ky. 321, 123 S.W.(2d) 1055; Consolidated Coach Corp. v. Burge, 245 Ky. 631, 54 S.W. (2d) 16, 18, 85 A.L.R. 1086. In the last cited case it is said:

"The measure of recovery is one-half of the amount paid to each of the passengers by the Consolidated Coach Corporation in accordance with its compromises with them; in no event an amount in excess of the one-half of the total sum paid by it to them. The burden rests upon Burge to show that the compromises were not made honestly and in good faith, or that the amounts paid thereunder were unreasonable or excessive.''

Also, in 31 C.J. p. 451, in respect of implied contract of indemnity in favor of one who is legally liable for the negligence of another and the nature of the liability or measure of damages, it is said:

"So, also, an implied contract of indemnity in favor of one who is legally liable for the negligence of another covers loss or damage only, and not mere liability, and as a general rule the measure of the liability over of the person who is primarily liable for the loss of injuries is the actual amount the person, who is secondarily liable, has been compelled to pay

as a natural consequence of the former's negligence or other wrong.''

Referring again to the case of Consolidated Coach Corporation v. Burge, supra, it may be noted that that was an action for contribution by one joint tort-feasor against another joint tort-feasor, but it appears that the measure of damages in actions for contribution and indemnity are the same with the exception, however, that in an action for contribution the plaintiff admits that he was partly in fault for accident and may recover only one-half of his liability to third parties, while in a suit for indemnity the plaintiff denies any negligence on his part and may recover the full amount of his liability to third parties. But in either class of action one entitled to contribution or indemnity has the right to make a good faith settlement with third parties to whom he is primarily liable in an action for indemnity, and partly or jointly liable in an action for contribution. In view of the foregoing, we cannot escape the conclusion that the measure of damages as between appellant and appellee for the merchandise destroyed is the amount paid by appellee to the owners of the merchandise, provided such settlements were made honestly and in good faith, which is a question to be determined from the evidence.

Clyde G. Foster testified that he had been in the employ of appellee company for four years as truck superintendent. He said that claims were made upon the company by various owners of the merchandise destroyed and that an investigation was made by the company as to the correctness of the claims and they spent about six months in making the investigation. It appears that he did not personally make the investigation but the company sent out its employees and agents to effect settlements with the various claimants which were reported to the company. They filed invoices of all claims settled showing the articles of merchandise and the exact amount of each claim, and the sums paid in settlement thereof. He said he had a memorandum showing the various items that were on the truck, who owned them and their reasonable market value, and that the memorandum was made from the company's weigh bills. He was asked to state the total market value of the goods that were destroyed and he said that the total amount was $1,558.05. Counsel for appellant objected to the witness' evidence with reference to the market value of the goods and the court ruled that the witness

could tell how he arrived at the value and the witness said that that was done through the company's agents who made investigations and marked the prices of merchandise and that was why it took so long to make the investigations, and after the investigations were made and the value of the merchandise determined the agents reported the results of their investigations to him.

The objections urged to the evidence is that the witness did not show he was qualified to testify as to the market value of the merchandise but was testifying from reports made to him by other agents of the company which appellant claims was "hearsay." If the measure of damages for the merchandise was the market value thereof appellant's objections might be well taken, but since the amount paid by appellee is the measure of damages, we think the evidence tends to show that the compromises were made in good faith. Appellant does not dispute the amount paid by appellee and it appears that the objection to the evidence is based upon the assumption that the market value of the merchandise is the proper measure of damages rather than the amounts paid therefor by appellee. The fact that the company sent out agents to make this investigation which extended over a period of six months would indicate that the company was making a careful and thorough investigation of the claims. Furthermore, the fact that appellee was paying for this merchandise without knowing it would ever be reimbursed for the same is indeed very significant. Even before the accident happened the Tradewater Grocery Company had been adjudicated a bankrupt and appellee could not have expected to collect much if anything from it even though it was contemplating bringing this action at the time the investigations and settlements were made. We think this circumstance alone is indeed strongly persuasive that appellee settled for the merchandise at the lowest sums or amounts possible, since it was to its interests to do so. No fact or circumstance is shown that would indicate that appellee had any reason or incentive to pay exorbitant or unfair prices in settlement of the claims. In the circumstances it would be unreasonable to believe that appellee would have paid exorbitant and unfair prices for the merchandise and then take its chances to recover therefor as against the insolvent grocery company or its employees. We think the evidence is sufficient to show that appellee made a fair and honest settlement with the

claimants for the merchandise and obtained the best bargain reasonably possible, or at the least it made a prima facie case of fair settlement which appellant did not attempt to rebut or contradict. Consolidated Coach Corporation v. Burge, supra.

We now come to consideration of the value of the truck and trailer. As heretofore stated, there is no dispute about the measure of damages regarding these vehicles but it is insisted that Foster did not show that he was qualified to testify as to the value of them. He testified that he had been truck superintendent for appellee for four years and was familiar with the truck and trailer and that the reasonable market value of them immediately before the fire and immediately after the fire was $1,600 or $1,700. He said that the truck and trailer were about fifteen to eighteen feet long and that the trailer was aluminum, which made it a higher price and it cost more to make it stand up under the weight it had to carry and that was the reason that the truck and trailer would cost $500 more than a normal steel trailer. He said that the truck and trailer were about sixteen to seventeen months old and had been run three or four times a week from Evansville to Nashville and had been run fifty or sixty thousand miles. He was asked to state the original cost of the vehicles, to which counsel for appellant objected and the court sustained the objection. It is said in brief of appellant that Foster did not disclose the original cost of the vehicles. If the original cost should have been proven appellant is now in no position to complain, since he prevented such evidence by his own objection. It is the rule that one cannot complain of an invited error. While the original cost of the vehicles might not have a very material bearing on the question of their reasonable market value at the time they were destroyed, yet it might have some bearing in estimating their present value, taking into consideration the time they had been in use, and the distance driven, etc. To illustrate the point, it is reasonable to assume that a motor vehicle that cost $1,500 originally and had been used eighteen months and driven fifty thousand miles would be worth more than one that cost $1,000 originally and had been used the same length of time and driven the same distance, assuming that the deterioration of each one was only the normal wear and tear to be reasonably expected for the time and use made of it.

Since it is shown by Foster that he had been superintendent of trucks for a number of years, was familiar with the vehicles in question, knew the material of which they were constructed, the time they had been used and the distance they had been driven and, we assume, that he would have stated the original cost of them had he not been prevented by the objection of counsel for appellant, we think he was qualified to testify as to the value of them.

The next contention of appellant is that appellee's truck driver, Arthur Tate, was guilty of contributory negligence as a matter of law and the court should have sustained appellant's motion for a directed verdict in his favor on that ground. When appellant approached the point where the accident happened, or just previous thereto, there were two cars parked on the side of the road. It appears that one of them was out of gasoline and the other car was behind it or preparing to get behind it to push it. Appellant turned from his right side of the road to the left to pass the parked cars and about that time appellee's truck was approaching. It appears that appellant cleared the parked cars and was endeavoring to get back to his side of the road when the truck was near him, and according to the evidence of the driver of the truck, it was about to collide with appellant's car and the driver of the truck cut to his right to avoid the collision which, as stated above, resulted in the accident. The contention that the truck driver was guilty of contributory negligence as a matter of law is based upon certain evidence, including that of Tate, tending to show that Tate saw the parked cars and appellant's car when he was at or near the crest of the hill approximately 400 feet away. Tate admitted that he saw the parked cars and perhaps appellant's car too when he was at or about the crest of the hill but there is a dispute about the distance from the scene of the accident to what is really the crest of the hill. According to the evidence of a civil engineer who made the measurements, the distance was about 480 feet, while it is the contention of appellee that the real "crest" of the hill is only about one-half that distance. This disagreement arises out of the fact that the grade is about six per cent from the scene of the accident to a certain distance up the hill and then drops to one per cent and continues for about the same distance to a point where it becomes perfectly level. It is insisted that the one per cent grade is

practically level and should not be considered a "hill" in the sense of obstructing the view of motorists. Be this as it may, however, the evidence is conflicting in other respects. Tate, the truck driver, testified that when he saw the parked cars and appellant's car he was traveling about thirty miles an hour and then slowed down to about twenty or twenty-five miles an hour, and was within seventy-five or one hundred feet of the parked cars when appellant was still behind them and then he, appellant, attempted to pass them and forced him to leave the road to avoid the collision. He said further that he was on his right side of the road all the time and never invaded the left, or appellant's side of the road. Another witness testified that Tate was fifty or seventy-five feet north of the parked cars "when appellant swung around them on his wrong side of the road," and another witness said that Tate was twenty-five to fifty feet from the parked cars when appellant went around them on to Tate's side of the road. It is also contended for appellant that Tate was driving the truck at a high rate of speed but the evidence is conflicting on that point. In view of the conflict of the evidence we think it very clearly presents a question for the jury and the court did not err in refusing a directed verdict on that ground.

The next complaint is directed to instruction D given on motion of plaintiff (appellee) and the refusal of the court to give certain offered instructions in behalf of appellant. Instruction D reads:

"The court says to the jury that if the driver of plaintiff's truck while exercising ordinary care for the operation of the truck, was suddenly and unexpectedly confronted by the approaching car of defendant, and by reason of the negligence of defendant J. P. Miles, if there was such negligence, the plaintiff's driver was thereby placed in imminent danger of a collision, real or to him reasonably apparent, and in a position of peril, and acted in such emergency, brought about as aforesaid; then the court says to the jury that the driver of the plaintiff's truck was not required under the law to adopt the best course possible to avoid the impending danger, but he had the right to operate his truck in such a manner as a reasonably prudent man would do under similar circumstances, to avoid

such danger, if any, considering traffic conditions upon the highway at the time and place.''

It is insisted (1) that the instruction was not necessary because if there was an emergency the driver of the truck created such emergency himself; and (2) if the truck driver's negligence did not create the emergency the instruction was erroneous under the authority of Golubic v. Rasnick, 239 Ky. 355, 39 S.W. (2d) 513; and Home Laundry Co. v. Cook, 277 Ky. 8, 125 S.W. (2d) 763. In the first cited case it was held that when the driver of a motor vehicle is confronted with an emergency he is entitled to a ''sudden emergency'' instruction excusing him from liability only if he was operating his car at a reasonable rate of speed, and with the means at his command and by the exercise of ordinary care could have avoided the accident. The argument is that the instruction was erroneous since it did not contain a qualifying clause to the effect that appellee is entitled to the advantage of a sudden emergency instruction only in the event he was operating his truck at a reasonable rate of speed and could not, with the means at his command and by the exercise of ordinary care, have avoided the accident.

Since it is the rule that all the instructions must be read and considered together, we will consider instruction D in connection with instruction No. 2, which latter instruction sets out the duties of the driver of appellee's truck and told the jury, among other things, that it was his duty not to drive the same at a greater speed than was reasonable or proper, having regard for the traffic and the use of the highway, etc., and further told the jury that if he failed to observe any one or more of such duties, and his failure caused the accident complained of, or so contributed to cause the accident that it would not otherwise have occurred, then the law is for the defendant (appellant). Instruction D told the jury, in substance, that if the driver of the truck, while exercising ordinary care in the operation of the truck, was suddenly and unexpectedly confronted with an emergency by the reason of the negligence of appellant and was thereby placed in danger of a collision, etc., he was then not required under the law to adopt the best course possible to avoid the impending danger, but had the right to operate his truck in such a manner as a reasonably prudent person would do under similar circumstances.

We think that instruction D, read and considered in connection with instruction No. 2, is a qualifying instruction. It gives the truck driver the benefit of the alleged emergency, conditioned upon whether or not he was exercising ordinary care in the operation of the truck which, of course, included reasonable rate of speed, etc., as set out in instruction No. 2, and provided further that such emergency was caused by the appellant. We do not think instruction D was prejudicially erroneous.

It is further insisted that the court erred in refusing to give instruction N offered by appellant relating to the speed of appellee's truck at the time and place of the accident. That instruction reads:

> "The court instructs the jury that it was unlawful for the driver of the plaintiff's truck and trailer at the time and place in question, to drive or operate the same at a rate of speed greater than 30 miles per hour, and if you shall believe from all the evidence that the driver of said motor truck and trailer was driving and operating the same at the time and place in question at a rate of speed greater than 30 miles per hour, and that such speed was the direct and proximate cause of the accident complained of, or so contributed to bring about said accident that but for such speed on the part of the plaintiff's driver, said accident would not have occurred, then the law is for the defendant, and you shall so find."

The court did not err in refusing to give the particular instruction offered since it fixes an absolute maximum rate of speed based upon section 2739g-86, of the Statutes, prescribing the legal rate of speed of trucks according to their weight and the condition of the road.

In the recent case of Thomas v. Dahl, 293 Ky. 808, 170 S.W. (2d) 337, it was pointed out that Chapter 106 of the Acts of 1938 materially amended the motor vehicle statutes in several respects. Section 2739g-51 of the old Statutes was repealed and re-enacted. The Dahl case held that section, as re-enacted, provided prima facie rates of speed for all vehicles without regard to classification, except expressly excluded municipal, fire, police and hospital vehicles, and that section 2739g-86 was one of the sections repealed. In the case at bar both sides offered an instruction on speed, but the court refused to instruct on the question other than to set out

in instruction No. 2, which dealt with the duties of the driver of the truck, that he was not to drive it at a greater speed than was reasonable or proper, having regard for the traffic and the use of the highway. We believe the trial court correctly refused to give an instruction on the speed of the truck, in view of our ruling in the Dahl case. The collision involved in the case under consideration occurred the latter part of 1938, so the provisions of section 2739g-51 of the old Statutes would be applicable to it. The first three paragraphs of section 2739g-51, as amended by Acts 1938, c. 106, follow:

"No operator of a vehicle upon a public highway shall drive at a greater speed than is reasonable and prudent, having regard for the traffic and for the condition and use of the highway, provided that:

"(1) Where a highway passes through a closely built up business portion of any city or town, if the rate of speed of passing automobiles thereon exceeds twenty miles per hour it shall be prima facie evidence of unreasonable and improper driving.

"(2) Where a highway passes through the residence portion of any city or town or around any sharp curve, or on a steep grade in or outside of such town or city, if the rate of speed of passing automobiles exceeds thereon twenty-five miles per hour it shall be prima facie evidence of unreasonable and improper driving.

"(3) Where a highway is outside of a closely built up business section of any city or town and is on a straight-away, unobstructed highway, if the rate of speed of automobiles thereon exceeds forty-five miles per hour it shall be prima facie evidence of unreasonable and improper driving. No person shall drive a motor vehicle at such slow speed as to block or impede the reasonable movement of traffic. Refusal to comply with the directions of an officer in accordance herewith shall constitute a misdemeanor."

It may be noted in passing that KRS 189.390 includes not only the foregoing provisions of section 2739g-51, but also section 2739g-86, which the Dahl case held to be repealed by implication.

Obviously, the first paragraph of section 2739g-51 is not applicable to the case at bar, since the accident occurred some four miles out in the country. Neither is the second paragraph applicable because the accident did not occur on a curve, and the evidence offered by the defendant showed the grade to be six per cent. Section 2739g-1 defined a steep grade as one exceeding seven per cent. This leaves the question of whether the evidence as to the speed of the truck warranted an instruction under the third paragraph of section 2739g-51. All the testimony on the question of speed, save that of one witness, showed the truck to be going less than 45 miles an hour. T. W. Lambert, who testified for Miles, said, in answer to the question, Can you give an estimate of the speed the truck was traveling when it came over the top of the hill? "From the size of the truck, we operate thirteen to fifteen trucks, it was going, I would say, forty-five or fifty miles." The question is, Does Lambert's testimony warrant an instruction on that point? He did not say the truck was going more than 45 miles an hour, but merely that it was going 45 or 50 miles. His own statement shows he was not certain as to the actual speed of the truck. It may be noted Miles himself said he was traveling about 30 miles per hour, and that the truck seemed to be going one-third faster than was he, which would place the speed of the truck at about 40 miles. We do not think Lambert's statement as to the speed of the truck constitutes more than a scintilla of evidence, if that, showing it was exceeding 45 miles. Therefore, we are of the opinion the court properly refused to give a separate instruction on speed.

The appellant stresses the recent case of Southern Oxygen Co. v. Martin, 291 Ky. 238, 163 S.W. (2d) 459, in urging that an instruction on speed should have been given. It is true the opinion in the Martin case says it was incumbent upon the court to give a proper instruction on speed where the evidence showed the car of the plaintiff to be traveling from 45 to 50 miles an hour at the time of the accident. We have examined the record in the Martin case and find one witness, who testified for the defendant, said the plaintiff's car "was going between 45 and 50 miles an hour, something like that." It is very doubtful whether the evidence as to the speed of the car in the Martin case was sufficient to warrant an instruction on speed. But, be that as it may, the witness definitely placed the speed of the car beyond 45

miles by saying, "It was going between 45 and 50 miles an hour." We have noted the testimony in the case at bar was merely to the effect that the appellee's truck was going 45 or 50 miles an hour, and not between 45 and 50 miles.

It follows we are of the opinion that the judgment should be and is affirmed.