# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: AUGUST 20, 2015
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2014-SC-000356-MR

JOSEPH WAYNE ALLEN        APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.        HONORABLE OLU ALFREDO STEVENS, JUDGE
NO. 04-CR-001360

COMMONWEALTH OF KENTUCKY        APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

A Jefferson Circuit Court jury found Appellant, Joseph Wayne Allen, guilty of three counts of first-degree rape and one count each of first-degree sodomy, kidnapping, first-degree sexual abuse, and tampering with physical evidence. For these crimes, Appellant was sentenced to a total of seventy years' imprisonment. He now appeals as a matter of right, Ky. Const. § 110(2)(b), and raises the following issues: (1) the trial court erred in awarding nine peremptory challenges to the Commonwealth, as it was not entitled to any; and (2) the trial court erred in informing Appellant as to his right to counsel under KRS Chapter 31, as that chapter does not permit the appointment of hybrid counsel.

## I. BACKGROUND

Appellant was originally tried and convicted of the underlying charges (and one count of first-degree burglary) in 2007. We heard his direct appeal in

*Allen v. Commonwealth*, 276 S.W.3d 768 (Ky. 2008) and reversed and remanded to the trial court for a new trial. The current appeal arises from Appellant's retrial, in which Appellant represented himself with the assistance of appointed counsel. Further facts will be developed as necessary for our analysis.

## II. ANALYSIS

### A. Peremptory Challenges

Appellant first argues that the trial court erred in awarding nine peremptory challenges to the Commonwealth. In framing his argument, Appellant challenges the constitutionality of KRS 29A.290(2)(b) which provides that "parties shall have the right to challenge jurors," and further specifies that "[t]he number of peremptory challenges shall be prescribed by the Supreme Court." Appellant asserts that, as the prosecution was not allowed peremptory strikes under common law, the Supreme Court may not allow them now. In his reply brief, however, Appellant acknowledges that this Court recently squarely addressed this issue in *White v. Commonwealth*, No. 2014-SC-000069-MR, 2015 WL 1544230, at *1-3 (Ky. Apr. 2, 2015).

In *White*, we stated:

> this Court has recently addressed the propriety of prosecutorial peremptory strikes. In *Glenn v. Commonwealth*, we declared that "although KRS 29A.290(2)(b) constitutes an encroachment by the General Assembly upon the prerogatives of the judiciary, it is not inconsistent with our rules, and is, therefore, upheld as a matter of comity." 436 S.W.3d 186, 188 (2013) (*citing Commonwealth v. Reneer*, 734 S.W.2d 794, 797 (Ky. 1987) (internal quotations omitted). Citing our authority under Section 116 of the Kentucky Constitution, we affirmed RCr 9.40

2

substantively, and reaffirmed our constitutional power as a Court to promulgate rules of practice and procedure—including our authority to set the rules for the allocation of peremptory strikes. "We alone are the final arbiters of our rules of 'practice and procedure.'" 436 S.W.3d at 188.

So although the *Glenn* decision did not squarely address the constitutionality of KRS 29A.290(2)(b), this Court deemed the statute acceptable by way of comity. "Comity, by definition, means the judicial adoption of a rule unconstitutionally enacted by the legislature not as a matter of obligation but out of deference and respect." *Taylor v. Commonwealth,* 175 S.W.3d 68, 77 (Ky. 2005) (internal citations omitted). In extending comity, we recognized that KRS 29A.290(b)(2) is consistent with our rules of practice and procedure. *Glenn,* 436 S.W.3d at 188.

. . . .

. . . *Glenn* held that the allocation of peremptory strikes falls within the Court's procedural rulemaking authority and extended comity to KRS 29A.290(2)(b). *Id.* Therefore, . . . let us be clear: the Court has upheld KRS 29A.290(2)(b) under the principles of comity. We reaffirm that decision today.

*Id.* at *2-3. We decline to depart from our recently-rendered opinion in *White* and reaffirm its holding today. This Court exercised its procedural rulemaking authority in allocating the number of peremptory strikes allowed to the parties and the trial court followed our mandates.

Furthermore, KRS 418.075 requires that the Attorney General be notified prior to the entry of judgment in a case calling into question the constitutionality of a statute. Appellant did not comply with this statute and we decline to further address the matter.

For the foregoing reasons, the trial court did not err by allocating nine peremptory strikes to the Commonwealth.

3

## B. Hybrid Counsel

Appellant next argues that he was improperly informed of his rights related to hybrid counsel and asks that this Court reverse his convictions and remand for a new trial on this basis. In order to properly address this issue, a thorough discussion of the conversations which took place during Appellant's ex parte hearing is required.

Appellant's trial counsel, Ms. Eschner, had also represented him in 2007 in his first trial. At the ex parte hearing, she explained that the policy at the Louisville Metro Public Defender's Office is that the same public defender represents a client on retrial. Ms. Eschner expressed that she was ready, willing, and able to represent Appellant.

Appellant presented two separate motions to the trial court at the ex parte hearing. When the trial court asked Appellant which motion he would like to address first, Appellant indicated his motion to dismiss counsel. Appellant relied upon two grounds for his desire to dismiss Ms. Eschner: first, that he would like to subpoena her and have her testify in his defense and, second, that he did not feel Ms. Eschner was there to help him. When questioned by the trial court regarding what he would have Ms. Eschner testify about, Appellant indicated he wanted her to testify about the DNA expert, discovery issues, and about their conversations regarding his case. The trial court told Appellant that Ms. Eschner would not be permitted to testify about those matters, as they have nothing to do with whether or not Appellant committed the offenses in question. The trial court informed Appellant that if

4

Appellant's only reason for wanting to dismiss Ms. Eschner was so that he could call her as a witness, the court would dismiss the motion summarily.

Appellant's next reason to dismiss Ms. Eschner was that he felt she was not on his side. Appellant indicated that, dating back to his first trial, Ms. Eschner ignored his directions about specific questions to ask witnesses and about giving him access to discovery materials. Appellant then indicated that he wanted to represent himself.

The trial judge gave Ms. Eschner an opportunity to respond. She indicated that she had turned over all of the more than five-hundred pages of discovery materials to Appellant during his first trial. She said it was true that Appellant had theories on his case that she did not agree with. Appellant's defense at trial was that he did not commit these crimes and that there was a problem with the DNA. In the first trial, Ms. Eschner hired a DNA expert who testified at trial. However, Appellant also wanted Ms. Eschner to present a theory that he had been set up by the police. She admitted that she did not present that theory at trial, as she did not find evidence to support it. Ms. Eschner kept Appellant's file open for seven years awaiting his extradition from Florida—where he was held on unrelated charges—and appeared at all hearings in the interim on Appellant's behalf. She explained that when Appellant told her he wanted to dismiss her as his counsel, she informed him that it would be difficult for another attorney to prepare for his case given the limited time frame, which Appellant was unwilling to extend. Ms. Eschner also indicated that Appellant asked her about being his co-counsel, but stated she

5

told Appellant this may present a problem if they disagreed on trial issues. She advised Appellant that he has a Constitutional right to represent himself and that he would need a hearing in front of the trial court if he wished to pursue that option.

The trial court agreed with Ms. Eschner that it would be impossible to find substitute counsel to try the case unless Appellant was willing to get a continuance (and Appellant indicated that he was unwilling to do so). However, the trial court told Appellant that, depending on his answers to the colloquy required by *Faretta v. California,* 422 U.S. 806 (1975), he may be allowed to represent himself. The trial court instructed Appellant that there were a lot of decisions he would not be able to make—that the trial court would require certain things regardless of whether he had counsel. The trial court informed Appellant he would be much better represented by his attorney and strongly urged him against self-representation, especially considering the fact that the penalty could be up to seventy years' imprisonment. Following the *Faretta* colloquy, the court then asked if it was still Appellant's desire to dismiss his attorney and represent himself and Appellant responded in the affirmative.

It was only after Appellant's indication that it was his desire to dismiss his attorney and represent himself, that Appellant *then* asked the trial court if his trial counsel could still help him subpoena witnesses and acquire an expert. The trial court indicated that this issue was addressed in Appellant's second motion, where, as the trial court described, Appellant asked for

"whisper counsel." The trial court told Appellant that if it completely dismissed Ms. Eschner, she would be entirely off the case and, as previously explained, bringing in substitute counsel was not an option given the time constraints. The trial court then asked Appellant if his desire was to have Ms. Eschner do some of the things he described (such as subpoena witnesses and find an expert), but that Appellant wished to conduct the majority of the in-court representation himself. Appellant agreed that was what he wanted. He specified that he would like for Ms. Eschner to agree to be his co-counsel on limited terms.

Ms. Eschner stated that she did go over Appellant's options with him at their meeting. She told him that, as the lawyer in the case, she gets to decide on things like trial strategy and whether to put a witness on the stand. She said she told Appellant that, if she agreed to be his co-counsel, that did not mean that he got to tell her what to do. The trial court agreed and told Appellant that by making Ms. Eschner co-counsel, he did not demote her to a lesser role and gain control over her. The trial court indicated that if it allowed Ms. Eschner to stay on as "whisper counsel," she retained the authority to make certain decisions. The court informed Appellant that he could make requests of her, but that she could still decline to follow his requests.

The trial court then asked Appellant if it was his desire to go forward either on his own or with Ms. Eschner as "whisper counsel" and Appellant indicated that he would prefer the latter option. The trial court made a finding that Appellant knowingly, voluntarily, and intelligently waived his right to

7

counsel and that he would be permitted to represent himself. The court then designated Ms. Eschner as, in its words, "whisper counsel" and said that role would be specifically defined with specific tasks.

Appellant now argues that the trial court erred in appointing Ms. Eschner as hybrid counsel, as "nothing in Chapter 31 permits appointment of 'hybrid' counsel.'" Appellant admits that this argument was not preserved at trial and asks this Court to review for palpable error under RCr 10.26. "Palpable error affects the substantial rights of the party and results in manifest injustice. Furthermore, an appellant claiming palpable error must show that the error was more likely than ordinary error to have affected the jury." *Boyd v. Commonwealth*, 439 S.W.3d 126, 129-30 (Ky. 2014). "In determining whether an error is palpable, 'an appellate court must consider whether on the whole case there is a substantial possibility that the result would have been any different.'" *Commonwealth v. Pace*, 82 S.W.3d 894, 895 (Ky. 2002) (citing *Commonwealth v. McIntosh*, 646 S.W.2d 43. 45 (Ky. 1983)).

Appellant argues that he did not adequately waive his right to counsel, as the trial court did not follow the statutory provisions for waiver. Specifically, he points to KRS 31.140 which states, in pertinent part: "A person who has been appropriately informed under KRS 31.120 may waive in writing, or by other record, any right provided by this chapter, if the court concerned, at the time of or after waiver, finds of record that he has acted with full awareness of his rights and of the consequences of a waiver and if the waiver is otherwise according to law. . . ." He argues that the right to trial counsel contained in the

8

KRS 31.110(2)(a) does not include anything about hybrid counsel. Therefore, he argues that he was not given accurate information about his options for representation at trial.

We find this argument disingenuous. First of all, Appellant's first motion was to dismiss his counsel. The trial court granted this motion after conducting a *Faretta* hearing and determining that Appellant did so knowingly, voluntarily, and intelligently. Then, *and at Appellant's behest*, the trial court appointed Ms. Eschner as "whisper counsel." Appellant did not rely on the trial court appointing hybrid counsel in making his decision to represent himself. Rather, he requested Ms. Eschner still be available to help him with certain aspects of the trial after he had already asked for her dismissal.

Furthermore, we agree with the Commonwealth that Appellant invited, and therefore waived, any alleged error.

> This situation presents circumstances akin to those where an appellant has "invited error." *See, e.g., Wright v. Jackson,* 329 S.W.2d 560 (Ky.1959) ("We have often held that a party is estopped to take advantage of an error produced by his own act."); *Miles v. Southeastern Motor Truck Lines,* 173 S.W.2d 990, 998, 295 Ky. 156, 173 (1943) ("It is the rule that one cannot complain of an invited error."). . . . [T]he rationale behind the notion [is] that one cannot commit to an act . . . and later complain on appeal that the trial court erred to his detriment . . . . "A defendant cannot complain on appeal of alleged errors invited or induced by himself, particularly where . . . it is not clear that the defendant was prejudiced thereby." *United States v. Lewis,* 524 F.2d 991, 992 (5th Cir.1975).

*Gray v. Commonwealth,* 203 S.W.3d 679, 686 (Ky. 2006). Any error Appellant now alleges was brought about by his request for Ms. Eschner's continued representation in a limited role—and we will not further entertain any

9

arguments on those grounds. The trial court did not err, much less did it err to the degree of creating a manifest injustice.

## III. CONCLUSION

For the foregoing reasons, we affirm Appellant's convictions and sentence.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Daniel T. Goyette, Louisville Metro Public Defender of Counsel
Joshua Michael Reho, Assistant Appellate Public Defender


COUNSEL FOR APPELLEE:

Jack Conway, Attorney General of Kentucky
Micah Brandon Roberts, Assistant Attorney General