**Leon BUSH, Harry Smith, and James Lafayette Bronston, Appellants,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 8, 1970.

Rehearing Denied Sept. 25, 1970.

Herman M. Dayton, Lexington, for Leon Bush.

W. Thomas Bunch, Lexington, for Harry Smith.

Benjamin J. Lookofsky, Lexington, for James Bronston.

John B. Breckinridge, Atty. Gen., Joseph Eckert, Asst. Atty. Gen., Frankfort, for appellee.

OSBORNE, Judge.

This is a consolidation of the appeals of Leon Bush, Harry Smith and James Bronston from their joint conviction in the Fayette Circuit Court of armed assault and malicious shooting and wounding with intent to kill. They each received prison sentences of life and 21 years to run concurrently.

Their chief contention upon this appeal is that the evidence against them was insufficient to support a conviction. As this was a joint trial of all three appellants, we are of the opinion the evidence will have to be tested as to each individual appellant.

The facts of the crime are as follows: On Friday, February 16, 1968, Mrs. Mary Faulkner, a sixty-nine-year-old-business woman of Lexington, returned home from her business between 9:00 and 9:30 p. m. As she was getting out of the car in her garage in a well-lighted area, she was confronted by two assailants wearing white masks and white hats. Mrs. Faulkner took a gun from her purse and fired at the masked men. She did not hit either. They returned her fire and she received three bullet wounds, as a result of which she was hospitalized for ten days. The crime was witnessed by Mr. Hayden, a young man who lived at the Faulkner home. Neither Mrs. Faulkner nor Mr. Hayden could identify the men, nor could they say whether they were white or Negro.

Thomas A. Fitzpatrick is a police officer for the city of Lexington. He was off duty on February 16, 1968. Somewhere between 9:00 and 9:30 he was driving on Walnut Street at the intersection of Main, with his wife, when he observed a red Pontiac convertible with a black top and Indiana license plates. He turned east on Main and so did the convertible. The convertible began to cut in and out of traffic at a high rate of speed. When the cars reached Walton Avenue on Main street, Fitzpatrick pulled up beside the convertible to get a look at the driver. He recognized Harry Smith, who had two male companions in the car with him. He did not recognize Smith's companions. Because of the lighting at the intersection, he was not able to see them very well, however, he did notice they had on white hats. Smith did not have on a hat at the time. The convertible proceeded on and went out Tates Creek Road. Officer Fitzpatrick obtained the license number and wrote it in his notebook.

Fred Blake is a police officer for the city of Lexington. On the night of February 16, after the shooting, he was patrolling and was dispatched to circulate the area at approximately 9:30 p. m. At the corner of Chenault and Cochran roads, ten or fifteen minutes after he received the call, he discovered two white hats and two masks in the middle of the road. The point where the articles were found is approximately six blocks from the scene of the offense.

Carol Ann Taylor, 26 years of age, is a resident of 501 E. North Aspendale Avenue, Lexington. She is a step-sister of the appellant, Leon Bush. She testified that on the day of February 16 she was at home with her children in company with her brother, Leon Bush, and his girl friend, Shirley Robinson; that she had been there all day; that sometime in the evening Shirley and Leon were in the kitchen and that they had an argument and Leon had Shirley make him a mask. This occurred around 5:30 p. m. One of the masks which had been found by officer

Fred Blake was exhibited to her and she positively identified it by shoe polish on it as the mask made by Shirley. She testified that in the process of getting the mask made, Leon made the statement that he needed the mask because "they was going to make some money" and said this woman, Mrs. Faulkner, "keeps money all the time." She testified that Bronston and Smith came by the house about 7:30 p. m. and they all left together in Smith's car, which was a burgundy convertible, Oldsmobile or Pontiac. She testified that Leon returned about 10:30 p. m. and knocked on the front door. She did not open the front door, so he came around back and said, "this is me." She then opened the back door. He was so nervous and he heaved. He then sat down and directed her to turn on the television. When the news was broadcast concerning Mrs. Faulkner's being shot, he said, "Well, I ought to have killed her." She testified that she did not see any of the others at that time, but on the following day, James Bronston came by the house and said, "They have picked up Harry." To Bronston's statement Bush responded, "Well, Harry didn't do the shooting, I done the shooting." She testified that Leon had a gun after he came back and that she saw the gun.

Shirley Robinson, 33 years of age, is a resident of 501 E. North Aspendale. She testified she made the mask that was introduced in evidence for Leon Bush and that at the time he advised her that he was going out on a job. She testified that he left between 6:30 p. m. and 7:00 and that she was not at home when he returned; that he had already arrived when she came in, which was approximately 11 o'clock; that she was present in the room and listened to the news with Leon and when asked, "What, if any, comment did Leon make while the news was on," she replied, "I think that he admitted to it to me." She further testified that she believed Leon was wearing a white hat when he left.

Upon trial, all three of the appellants used the defense of alibi; all three denied any knowledge of the crime. They requested separate trials and insist the court committed prejudicial error in overruling their motion. We do not believe there was any error in this respect. A party moving for separate trial has the burden of showing facts to justify the relief sought. Peek v. Commonwealth, Ky., 415 S.W.2d 854 (1967). We do not believe there was sufficient showing made in this case. Some of the evidence introduced against Bush might not have been competent as against the other appellants in a separate trial. However, this alone will not require the granting of separate trials. Hoskins v. Commonwealth, Ky., 374 S.W. 2d 839 (1964); Fanelli v. Commonwealth, Ky., 418 S.W.2d 740 (1967); Boggs v. Commonwealth, Ky., 424 S.W.2d 806 (1968). The test of whether a trial court abuses its discretion in refusing a severance must be made upon the basis of the showing presented at the time the motion is made and ruled upon. In the absence of a surprise development in the trial and a renewal of the motion for a severance, this court will not take the facts as they later develop at the trial and say that upon these facts the trial court erred in not granting the severance in the first instance. To do so would amount to second guessing the trial court with the advantage of hindsight.

We are of the opinion the evidence against appellant Leon Bush is overwhelming. If Carol Ann Taylor and Shirley Robinson can be believed, there is no doubt concerning his guilt. It is contended by appellant Bush that Carol Ann Taylor was in some sort of trouble with the police and that she might have been intimidated into giving false evidence and that Shirley Robinson was suffering from a nervous disorder and had been in a mental hospital. All of this goes to the credibility of the witnesses, which has since time immemorial been a question for the jury. The jury chose to believe the witnesses and we do not choose to overturn the jury.

The appellant, Harry Smith, left the apartment in company with Leon Bush at a time when all facts establish that Bush was on his way to commit a crime. He was later seen in the vicinity where the crime was committed in the car with two companions, who were wearing white hats. Following his arrest, Bronston called on Bush and advised him that Harry had been picked up. Carol Ann Taylor testified to that meeting as follows:

"A. James Bronston, yes, said that they had picked up Harry, and Leon said, 'Well, Harry didn't do the shooting,' said, 'I done the shooting,' and he said, 'I'm going down to see Harry,' and Shirley said, 'No,' said, 'Don't go down to see Harry because that's a dead give-a-way,' and he said, 'Well, I can tell them I got a brother down there.'"

No objection was made by any of the appellants to the question which brought forth this answer or to the answer. No motion was made by any of them that the evidence be stricken or that the jury be admonished concerning its lack of admissibility as to any of the appellants. No objection being made, the testimony was properly in evidence. It, therefore, could be considered by the jury and given such weight as they deemed proper. Even though the evidence was hearsay as to the appellant Harry Smith, who was not present when the statements were made, it is a universal rule that relevant evidence received without objection may properly be considered even though it be incompetent under the hearsay rule and would have been excluded if properly objected to. 30 Am.Jur.2d, Evidence, § 1089, p. 246; Burke v. Tackett, 313 Ky. 583, 233 S.W.2d 115. Under the foregoing authority we are of the opinion the jury could properly consider this conversation between Bush and Bronston as implicating Smith. In any event it was probably admissible against Smith anyway as he was properly being tried jointly with Bronston and Bush and evidence that may be incompetent against one defendant will not be excluded on that account if it is competent against others.

The evidence against Bronston was the same as that against Smith except we do not have the hearsay problem since he was present and took part in the conversation with Bush.

Judgment affirmed.

All concur.