Lloyd LEAR, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Nos. 92–SC–1009–MR, 92–SC–1039–TG.

Supreme Court of Kentucky.

Sept. 29, 1994.

W. Earl Dean, Dean, Dean & Dean, Harrodsburg, Philip S. George, Jr., Lebanon, for appellant.

Chris Gorman, Atty. Gen., Gerald Henry, Michael Harned, Asst. Attys. Gen., Criminal Appellate Div., Frankfort, James W. Barnett, Danville, Michael Conover, Harrodsburg, for appellee.

WINTERSHEIMER, Justice.

This appeal is from a judgment based on a jury verdict which convicted Lear of two counts of first-degree rape and one count of first-degree sodomy. He was sentenced to two consecutive and one concurrent life terms of imprisonment.

Lear raises five issues on appeal as follows: 1) Propriety of denying continuance; 2) evidence of other crimes; 3) habeas corpus relief and the disqualification of the trial judge; 4) sentencing errors; and 5) improper closing argument.

Lear was convicted of rape and sodomy involving his pre-teenage step-granddaughter and step-niece. The first count of rape occurred in the summer of 1978. The other count of rape and the sodomy occurred between 1981 and 1986. One of the victims told her mother about Lear for the first time after Christmas of 1990. The police were then informed and Lear was indicted in 1991. The other charges were developed as a result of police investigation and admissions by the victims. Three continuances were granted because of alleged health problems of Lear and the trial was delayed for more than eight months. This appeal followed his conviction.

We shall consider the allegations of error as they are raised by the briefs.

■ Lear argues that the trial judge committed reversible error and abused his discretion which resulted in a denial of due process by not granting Lear's request for a continuance on the morning of trial because Lear was sedated and incompetent to stand trial.

The record indicates that Lear's trial was continued three times from March 10, 1992 until November 16, 1992, a total of more than eight months delay. The trial judge concluded that Lear was using his claims of poor health to further his trial strategy and to avoid trial.

Lear contends that the previous delays were on the advice of his physician, yet his counsel admitted that the doctor had suggested that Lear should work as much as he could. In fact, Lear was working at his fruit business, doing the things he had always done in regard to his occupation. The doctor also testified that in his opinion, sitting through a trial was less strenuous than working. Lear stated that he was able to proceed with his testimony when asked directly at the trial. Lear testified in his own behalf and twice said that he was able to go forward with the trial and with his testimony. During his testimony, he told the jury "Folks, I've only got four months to live. They told me I'm terminal." In closing argument, Lear's counsel told the jury that the defendant was almost dead, that he's dying right now and that he won't be here long. During the course of the trial, Lear insisted that he

be pushed in a wheelchair, physically carried or assisted in walking by a four-prong cane. When the jury was not present in the courtroom, he would walk out of and back into the courtroom without a wheelchair or assistance of any kind.

The trial judge did not abuse his discretion in denying a continuance. His decision should not be overturned unless such discretion was plainly abused or resulted in a manifest injustice. *Wilson v. Commonwealth*, Ky., 601 S.W.2d 280 (1980).

▮ Before trial, Lear's doctor testified that an additional three month delay was required because of his observation of a new stroke syndrome. When questioned about the syndrome, he said his conclusion was based on experience, intuition and a previous history with the patient as distinguished from any laboratory testing. A CAT scan was performed to see if a stroke could be visualized and it was negative. A neurologist did not believe that an MRI scan was necessary. . Lear's physician testified that a person could simply say and act like he had a stroke. Here the trial judge considered all the facts and circumstances in the record and correctly declined to grant a fourth continuance. Some of the circumstances in such an evaluation include the length of delay, previous continuances, inconvenience to witnesses and the court, and whether the delay is purposefully caused by the accused. *Snodgrass v. Commonwealth*, Ky., 814 S.W.2d 579 (1991).

▮ Lear's claim that he was incompetent to stand trial is without merit. An incompetency hearing is only required when the trial judge is presented with sufficient evidence of reasonable doubt of competency to stand trial. *Hunter v. Commonwealth*, Ky., 869 S.W.2d 719 (1994). If no reasonable grounds exist for doubting a defendant's competency, no error occurred in not holding a hearing. *Gilbert v. Commonwealth*, Ky., 575 S.W.2d 455 (1978). Reasonable grounds must be called to the attention of the trial court or must be so obvious that the trial judge cannot fail to be aware of them. *Henley v. Commonwealth*, Ky., 621 S.W.2d 906 (1981). The mere filing of the motion in the circumstances presented here does not raise a ques-

tion of reversible error. When asked directly under oath, Lear testified that he was able to proceed with his trial testimony.

▮ Lear maintains that the trial judge committed reversible error by admitting into evidence the prior sexual abuse of young female step-family members and that the prosecution did not give pretrial notice to him of such evidence.

Initially, the record indicates that proper notice was given by letter dated February 5, 1992. *See* KRE 404(c). Lear acknowledged receipt of such notice in his first motion for continuance. He made no objection of any kind to such evidence at that time. Defense counsel first raised an objection on the morning of trial. The evidence involved other sexual contact with victims who were family members. They were all very young, related females who were living in or visiting the Lear home. During their time in the home, Lear would lock the doors and order other children away from the house. The pattern of conduct and method of operation was very similar and went on for many years, eventually reaching the child of a woman whom he had abused when she herself was just a child. The evidence was not improper.

*Billings v. Commonwealth*, Ky., 843 S.W.2d 890 (1992). defines the current approach to the admission of collateral evidence of uncharged similar acts by a defendant. It involved first and second-degree sodomy against a stepdaughter who was aged 11 and 13 at the time of the acts. Common facts rather than common criminality are the keystone of such an examination. The real question is whether the method of the commission of the other crime or crimes is so similar as to indicate a reasonable probability that the crimes were committed by the same person. If it does, evidence that the defendant committed the other crime is admissible to show intent, motive or common plan. If it only tends to show a disposition to commit a crime, the evidence is not admissible. *Cf. Billings.* Here, the victims were all very young females, step-relatives of the defendant, who were living in or visiting his home and under his independent family control. They were all subjected to physically intru-

sive acts of rape and sodomy. They were always admonished not to tell because of family distress, breakup or separation.

■ The acts in question went on for many years extending from stepdaughter to step-granddaughter and step-niece. It was only when the step-granddaughter told her mother, the defendant's stepdaughter, of being raped, that the mother immediately fully appreciated the situation because she knew that Lear had raped her when she was a young girl living in his house. The step-niece spoke up because her sister was about to visit Lear's home and she did not want an incident to occur. Another stepdaughter told of her repeated rapes by Lear after being told of the rape of a step-granddaughter and after being asked by the step-granddaughter's mother if she too had been raped as a young girl. These events are not just isolated instances used to show the criminal or lustful tendencies of the accused. This evidence indicated a long series or pattern of conduct which was ongoing over a period of years. *See Bell v. Commonwealth*, Ky., 875 S.W.2d 882 (1994). The remoteness in time of uncharged acts is a concern which must be carefully weighed as a part of the trial court's decision. Those concerns are, however, tempered when the acts in question so clearly show such a well-defined continuous pattern of conduct. Under all of the circumstances, the requirements of *Billings* and *Bell, supra,* were satisfied and the evidence was properly admitted.

■ Lear contends that habeas corpus relief should have issued and that the trial judge should have been disqualified. Lear filed a notice of appeal and a petition for habeas corpus relief on the same day. Habeas corpus was denied. Habeas corpus is an extraordinary remedy which is only available when other relief is inadequate. *Gray v. Wingo*, Ky., 423 S.W.2d 517 (1968). Direct appeal is an adequate remedy in this situation, and Lear was not entitled to habeas relief. Denial of such relief was not reversible error.

There is no basis for the claim by Lear that the trial judge should have disqualified on the grounds of bias or prejudice. The complaint about bias or prejudice was re-

solved before trial by a Justice of the Supreme Court. A review of the record in this case supports that pretrial decision. At the close of the trial, Lear himself expressed his appreciation to the trial judge for the fairness exhibited by the bench.

■ A matter of considerable interest is the argument regarding loss of jurisdiction in the trial court because the defendant filed a motion pursuant to KRS 26A.020 stating that the trial judge would not afford him a fair and impartial trial. The motion was filed at 3:28 p.m. on the Friday preceding the Monday morning trial. On Monday, November 16, 1992, the preliminary trial proceedings began at an unstated hour. The trial judge expressed his view that there was no reason not to proceed to trial. Lear's counsel did not object or otherwise disagree. The trial judge then noticed that a motion and affidavit for recusal had been filed by Lear. The trial judge indicated that he thought he could proceed to trial and again no objection or other disagreement was expressed by Lear. The parties considered other pretrial matters, including the medical and continuance arguments. Lear did not raise any question regarding the absence of jurisdiction or authority.

Then, much later as shown in the transcript of evidence, Lear for the first time wanted to get on the record with a statement from the circuit court clerk as to whether the court had complied with KRS 26A.020 by contacting the Chief Justice about recusal. The trial court agreed with defense counsel that there was a need to know the status.

In response to the defendant's request, other matters were considered with the cooperation of defense counsel. The trial judge then expressed the view that if a valid recusal motion had been filed pursuant to statute, that it was a jurisdictional matter and that he could not proceed.

Voir dire was undertaken and completed at 11:20 a.m. The office of the Chief Justice received a fax copy of the recusal motion at 11:21 a.m. After a lunch recess, the trial judge was notified that the Chief Justice had denied the motion and that a written order would be sent by fax. Lear and his counsel

were advised on the record of the Chief Justice's decision in open court. Lear did not raise an objection. The jury was sworn and the trial commenced. At 2:03 p.m., a copy of the order from the Chief Justice was delivered by fax.

 Jeopardy attaches only when the jury is impanelled and sworn. *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). The trial court had jurisdiction to swear the jury and to proceed to trial because the Chief Justice had acted and notified the Court before the critical event occurred. Proper notice was given by the Chief Justice before jeopardy attached, and the defendant made no claim of error at the voir dire proceedings. Under all the circumstances, there was no reversible error.

Lear next argues that the trial judge committed reversible error at the sentencing phase by not requiring the prosecution to prove the success-failure rate for parole of a defendant with minimum parole eligibility.

At the sentencing phase, the prosecution called as a witness, a member of the Justice Cabinet Division of Probation and Parole, who testified as to parole eligibility for persons sentenced to imprisonment between twenty years and life. During cross-examination of the witness, the defense objected to the previous testimony when the witness was unable to provide information regarding the chances of a prisoner being released on parole. Lear did nothing to attempt to introduce such evidence himself. Now he complains that because a witness did not provide the testimony he desired, it was somehow error to allow testimony which potentially hurt him. He is unable to provide any citation to authority to support such a theory. Thus we conclude that there was no reversible error.

The final issue raised by Lear is that the prosecutor acted improperly during closing argument by repeating Lear's testimony that he was impotent and that he had a wife and two girlfriends to "take care of." Lear made no objection during closing argument to these remarks. His own closing argument indicates a claim of impotency in an attempt to prove his innocence. Here the record fails to show any objection to closing argument and there is no reason to consider it on appeal. *Glasscock v. Commonwealth*, Ky., 307 S.W.2d 188 (1957).

 Lear was incorrectly sentenced to two consecutive and one concurrent life terms. Life sentences may not be ordered to run consecutively. *Bedell v. Commonwealth*, 870 S.W.2d 779 (1994).

The judgment of conviction is affirmed. The case is remanded to the circuit court for a sentencing order where all life sentences will run concurrently.

STEPHENS, C.J., and LAMBERT, REYNOLDS and SPAIN, JJ., concur.

LEIBSON and STUMBO, JJ., concur in result only.