Walter Durrell **GRAY**, Appellant,

v.

**COMMONWEALTH OF KENTUCKY,**
Appellee.

No. 2004–SC–000457–MR.

Supreme Court of Kentucky.

Oct. 19, 2006.

As Corrected Oct. 20 and 31, 2006.

 

 
 
 
 

 

 
 
 
 
 

 

 
 
 

 
 
 
 

 
 

 
 
 

 
 
 
 

 
 

Shannon Dupree, Assistant Public Advocate, Department of Public Advocacy, John Palombi, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, James Havey, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

This appeal arises out of the Appellant's conviction for the murder of Andrea Tiller in Lexington, Kentucky, for which Appellant was sentenced to forty-five years in prison. Tiller arrived in the parking area of the Arbor Grove housing project after arranging a drug purchase with Bobby Faulkner. The Appellant, Faulkner, and Octavious Eggerson approached Tiller's car. Eggerson remained on the sidewalk while Faulkner and the Appellant walked up to the car. The Appellant leaned into the open driver's side window while Faulkner stood to his left. The Appellant attempted to sell the crack to Tiller, but became angry when Tiller insisted on making the purchase from her contact, Faulkner. The Appellant then shot Tiller six times, killing her.

The Appellant argues several errors on appeal. First, he argues that the trial court erred by excluding two statements made by witnesses called by the Commonwealth. Both statements were excluded on the ground that the Appellant failed to provide the statements to the Commonwealth prior to trial in violation of reciprocal discovery. He further argues that the trial court erred (1) in refusing to continue the penalty phase until the next morning; (2) in allowing the attorney for the Commonwealth to make improper and prejudicial comments that denied him due process and a fair trial; (3) in allowing the Commonwealth to use a peremptory strike to improperly strike a prospective African–American juror violating the Appellant's right to equal protection under the law; (4) by denying him due process when it failed to grant a mistrial due to the admission of prior bad acts; and (5) in overruling Appellant's motion for a directed verdict on the murder charge.

## I. *RECIPROCAL DISCOVERY AGREEMENT*

Appellant's first claim of error arises from the trial court's exclusion of a written statement by Octavious Eggerson and an audiotaped statement of Rose Crutcher, a resident in the neighborhood where Tiller

was shot and killed. The Appellant attempted to use each of the statements to refresh the witnesses' recollection or to impeach them at trial. The Commonwealth, however, objected to the use of the statements, and the trial judge excluded the evidence on grounds that the Appellant had failed to provide the statements to the Commonwealth pursuant to a pre-trial conference agreement in which both parties agreed to provide reciprocal discovery. The Appellant argues that he was not required to provide the statements, as there was no court order requiring him to do so and that the agreement entered into by the Appellant's trial counsel and the Commonwealth did not specifically require the statements to be provided in order to be admissible at trial.

At the bench conference, Appellant apprised the trial judge and opposing counsel of the substance of the written and taped statements. He later tendered the tape and statements to the trial court for avowal purposes after the conclusion of his jury trial, just before the final sentencing by agreement with the Commonwealth.

■ While we find that counsel did not technically preserve the matter for appellate review by avowal, as argued by the Commonwealth, the issue was nevertheless preserved for appeal by the Agreed Order wherein the Commonwealth "agreed that the written statements ... and an audio tape of a statement/conversation ... be allowed as an avowal to be part of the Defendant's record on appeal." This, in addition to the fact that counsel also proffered the substance of the excluded statements to the trial court and opposing counsel during the bench conferences, adequately preserved the issue for review and satisfies the purposes for making the offer of proof. Since the Appellee agreed to allow the statements to be filed as an avowal, albeit late, it thus waived any objections on appeal as to the preservation of this issue. Accordingly, we find the issue preserved.

Having found the issue adequately preserved for review, we must determine whether or not the trial court abused its discretion in excluding the written statements and audio tape of a statement/conversation. In doing so, we will look at each instance where the evidence was excluded.

### A. Exclusion of Rose Crutcher's Audiotaped Statements.

■ Notwithstanding Appellant's offer of proof for preservation of the issue for review, we find that Appellant has nonetheless waived his right to complain of any error allegedly committed by the trial court in excluding the audiotaped statements of Rose Crutcher.

During Crutcher's testimony at trial, Appellant's defense counsel attempted to introduce audiotaped statements that defense counsel and an investigator recorded in an interview they had with Crutcher in which she stated that she thought someone other than Appellant may have held the murder weapon in her apartment immediately after Andrea Tiller was shot and killed. From the record, it appears Appellant was attempting to impeach Crutcher's testimony with these prior inconsistent statements when the Commonwealth objected on the grounds that this evidence was never disclosed to the prosecution pursuant to the reciprocal discovery agreement between the parties.

Upon sustaining the Commonwealth's objection, the trial judge reminded defense counsel that *he could ask* the witness if she remembered making certain statements to him which may have implicated someone other than Appellant as the person holding the murder weapon. If the witness could not remember, the trial judge instructed

defense counsel that he would then be prohibited from further questioning the witness and could not introduce the audiotaped statements because he had failed to comply with the reciprocal discovery agreement and because the proper foundation had not been laid. However, defense counsel asked no further questions on this matter, thus waiving his right to complain on appeal that the trial court committed reversible error in excluding the audiotaped statements.

■ The reciprocal discovery agreement between the parties stated, in pertinent part, that the Appellant agreed to provide reciprocal discovery pursuant to RCr 7.24(3)(A)(i). This rule, however, only requires the defendant to "permit the Commonwealth to inspect, copy, or photograph *any results or reports of scientific tests or experiments made in connection with the particular case.*" RCr 7.24(3)(A)(i) (emphasis added). As such, the rule would not apply in this instance to the audiotaped statements.

Of course, failure to provide the necessary discovery mandated by RCr 7.24 may result in a number of consequences, one of which is that the trial court may "prohibit the party from introducing in evidence the material not disclosed." RCr 7.24(9). Here, the trial court prohibited the introduction of the audiotaped statements because it found that Appellant failed to disclose Rose Crutcher's taped statements as

provided for by the reciprocal discovery agreement.[1] However, because the agreement only required Appellant to provide the Commonwealth with scientific results under RCr 7.24(3)(A)(i), the exclusion of Crutcher's audiotaped statements was an abuse of discretion and erroneous. *Goodyear Tire and Rubber Co. v. Thompson,* 11 S.W.3d 575, 577 (Ky.2000).

■ Despite finding the trial court erred in excluding this evidence, we find the error to be harmless. Defense counsel's failure to ask Crutcher whether she remembered making prior statements to him effectively waived any argument on appeal that the trial court's exclusion of the evidence constitutes reversible error. Furthermore, by foregoing the opportunity to ask Crutcher about her prior statements and thus laying the proper foundation for introduction of her prior statements, Appellant cannot now complain that the trial court erred. In this vein, the trial court's exclusion was proper, as Appellant failed to provide the proper basis for Crutcher's prior statements to be admissible. KRE 801A; KRE 613. However, as we have already expounded, the trial court could not properly exclude these statements on the basis of a violation of the reciprocal discovery agreement as the agreement did not require Appellant to disclose the audiotaped statements, al-

1. The trial court premised its exclusion of the statements on the language of RCr 7.24(3)(A)(ii). The operative part of RCr 7.24(3)(A)(ii) requires the defendant to disclose to the Commonwealth materials, including tangible objects and documents, "which the defendant intends to introduce into evidence." Here, the Appellant attempted to introduce the audiotaped statements, arguing that they supported impeachment of Crutcher's live testimony. Appellant argues on appeal that RCr 7.24(3)(A)(ii) requires the defendant to disclose written statements only if he intends to introduce them into evidence. Whether an attorney can "intend" to introduce impeachment evidence before trial has even begun and before he or she even knows what witnesses may need to be impeached, may be a matter of great debate. However, because the reciprocal discovery agreement only couched Appellant's obligation under the terms of RCr 7.24(3)(A)(i), we decline to address whether or not impeachment evidence may be evidence which one "intends to introduce into evidence."

though any error in doing so was harmless.

■ This situation presents circumstances akin to those where an appellant has "invited error." *See, e.g., Wright v. Jackson,* 329 S.W.2d 560 (Ky.1959) ("We have often held that a party is estopped to take advantage of an error produced by his own act."); *Miles v. Southeastern Motor Truck Lines,* 173 S.W.2d 990, 998, 295 Ky. 156, 173 (1943) ("It is the rule that one cannot complain of an invited error."). Although most criminal cases addressing the issue of invited error do so in the context of a criminal defendant's waiver of his right to a jury trial, *see United States v. Page,* 661 F.2d 1080, 1082–83 (5th Cir. 1981); *Jackson v. Commonwealth,* 113 S.W.3d 128, 134–36 (Ky.2003), the rationale behind the notion that one cannot commit to an act (such as waiving a jury trial) and later complain on appeal that the trial court erred to his detriment is equally applicable when a criminal defendant fails to act (such as foregoing the opportunity to question a witness) as Appellant's defense counsel did here. "A defendant cannot complain on appeal of alleged errors invited or induced by himself, particularly where . . . it is not clear that the defendant was prejudiced thereby." *United States v. Lewis,* 524 F.2d 991, 992 (5th Cir.1975), *cert. denied,* 425 U.S. 938, 96 S.Ct. 1673, 48 L.Ed.2d 180 (1976).

In this case, Appellant was given the opportunity to question Crutcher about whether or not she had made previous statements concerning the alleged shooter on the day Tiller was killed. Essentially, the trial court gave him the chance to get into evidence by way of Crutcher's admission that which otherwise would have been excluded based on the trial court's erroneous finding of a reciprocal discovery agreement violation. If she had denied making such a statement, Appellant would have

been left only with her answer. Had this set of circumstances actually been realized, Appellant's argument that the audiotaped statements were improperly excluded becomes less tenuous. The actual circumstances in this case, however, differ greatly, and as such, any error in the exclusion of the audiotaped statements was waived, but nevertheless harmless for the reasons aforementioned.

*B. Exclusion of Octavious Eggerson's Written Statements.*

In the second instance, the trial court prohibited Appellant from introducing written statements of another witness, Octavious Eggerson (Eggerson). From the record, it appears that Eggerson's written statements, one six months after the murder and another two months before trial, bolstered his testimony rather than impeaching it. Again, because the trial court found Appellant's failure to disclose this evidence to be a violation of the reciprocal discovery rules, the evidence was excluded. Appellant now argues that the written statements should have been admissible under the hearsay exception for prior inconsistent statements or prior consistent statements. We do not agree.

■ Initially, we note that the trial court's exclusion was indeed correct, but find that the basis for such an exclusion was improper. As already stated, Appellant's obligation under the reciprocal discovery agreement referred to RCr 7.24(3)(A)(i), which applies only to results or reports of scientific tests or experiments. Thus exclusion for violating the reciprocal discovery agreement was erroneous, though any error in the exclusion of Eggerson's prior statements was harmless as the statements were otherwise inadmissible.

■ KRE 801A(a)(1) allows admission of prior inconsistent statements of wit-

nesses provided the witness testifies at trial and is examined about the statement, with the proper foundation laid pursuant to KRE 613. Of course, the most important point is that the statements made at trial must, in fact, be inconsistent with those made prior to the witness's testimony. "[I]t is not a mere difference of statement that suffices; nor yet is an absolute oppositeness essential; it is an inconsistency that is required." *Commonwealth v. Jackson*, 281 S.W.2d 891, 895 (Ky.1955). Inconsistency may be found when "the proffered statement and the witness' testimony lead to inconsistent conclusions, indicating the witness' differing expressions appear to have been based on incompatible beliefs." *Id.* at 897.

Since Eggerson's testimony at trial was nearly identical to his written statements, the evidence was not admissible as prior inconsistent statements. Thus, this argument fails.

 Appellant also argues that the written statements were admissible as prior consistent statements. There is no merit to this argument, as there is no rule which would allow defense counsel in this case to introduce Eggerson's prior statements. Prior consistent statements are admissible provided the proper foundation is laid pursuant to KRE 613 and the statements are "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." KRE 801A(a)(2). None of the conditions required for the admission of prior consistent statements were apparent in this case. Moreover, because prior consistent statements can have a rehabilita-

tive effect on a witness's credibility,[2] it is inconceivable that a party would want to rehabilitate a primary witness of his opponent or rebut a charge of recent fabrication or improper motive on the part of an opponent's witness.

 Again, although the trial court erred in excluding the written statements on the basis of an alleged violation of the reciprocal discovery agreement, any error in doing so was harmless as the evidence was otherwise properly excluded for the reasons set forth herein.

## II. *DENIAL OF CONTINUANCE*

The Appellant's second claim of error is the trial court's denial of his motion to continue the penalty phase of his trial. The jury returned its guilty verdict at approximately 5:54 p.m. on the fourth day of trial. Just prior to the jury's return, Appellant's counsel approached the bench and asked the judge if the penalty phase "absolutely [had] to be done today?" He informed the court that he was not prepared to proceed and that he would need character witnesses for the penalty phase. The Commonwealth objected to any continuances. Ultimately, the trial court denied the continuance as the jury had been told that the case would conclude that day and the following day was the trial court's motion day and could not be rescheduled.

Shortly thereafter, the court began the penalty phase. The Appellant then called his aunt, Dora Gray, as a character witness. She testified the Appellant got mixed up with the wrong crowd and asked

2. We are cognizant that "[a]s a general rule, a witness cannot be corroborated by proof that on previous occasions he has made the same statements as those made in his testimony." *Eubank v. Commonwealth*, 275 S.W. 630, 633, 210 Ky. 150 (Ky.1925). Although a pre-Rules case, *Eubank* correctly asserts that prior consistent statements may not primarily be used to rehabilitate credibility; however, such consistent statements can have "probative force bearing on credibility beyond merely showing repetition." *United States v. Pierre*, 781 F.2d 329, 333 (2d Cir.1986).

the jury to give her nephew the minimum sentence. The jury, however, recommended a sentence of forty-five years.

The Appellant argues that the trial court abused its discretion by denying the continuance. RCr 9.04 directly addresses motions for continuances:

The Court, upon motion and sufficient cause shown by either party, may grant a postponement of the hearing or trial. *A motion by the defendant for a postponement on account of the absence of evidence may be made only upon affidavit showing the materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it. If the motion is based on the absence of a witness, the affidavit must show what facts the affiant believes the witness will prove, and not merely the effect of such facts in evidence, and that the affiant believes them to be true.* If the attorney for the Commonwealth consents to the reading of the affidavit on the hearing or trial as the deposition of the absent witness, the hearing or trial shall not be postponed on account of the witness's absence. If the Commonwealth does not consent to the reading of the affidavit, the granting of a continuance is in the sound discretion of the trial judge.

RCr 9.04 (emphasis added).

The Appellant's argument in support of a finding of error is based predominantly on the factors delineated in *Snodgrass v. Commonwealth*, 814 S.W.2d 579, 581 (Ky. 1991), *overruled on other grounds by Lawson v. Commonwealth*, 53 S.W.3d 534, 542 (Ky.2001), wherein we held that a trial court should, on a proper motion under RCr 9.04, consider the following factors: length of delay; previous continuances; inconvenience to litigants, witnesses, coun-

sel, and the court; whether the delay is purposeful or is caused by the accused; availability of other competent counsel; complexity of the case; and whether denying the continuance will lead to identifiable prejudice. *See also Lear v. Commonwealth*, 884 S.W.2d 657 (Ky.1994). In this regard, we have repeatedly said "[t]he decision to delay [a] trial rests solely within the court's discretion." *Snodgrass*, 814 S.W.2d at 581; *see also Williams v. Commonwealth*, 644 S.W.2d 335 (Ky.1982). Where the alleged circumstances involve the unavailability of a known witness, RCr 9.04 requires a moving party make its motion upon affidavit showing the court the materiality of the evidence of the absent witness as well as the diligence exercised to procure the witness or evidence. This was not done.

In *Eldred v. Commonwealth*, 906 S.W.2d 694, 699 (Ky.1994), *overruled on other grounds by Commonwealth v. Barroso*, 122 S.W.3d 554 (Ky.2003), we held that the decision as to whether to grant a continuance is within the sound discretion of the trial court based upon the unique facts and circumstances of the case, these unique facts and circumstances being the factors set forth in *Snodgrass*. *See also Lovett v. Commonwealth*, 858 S.W.2d 205 (Ky.App. 1993) (holding that only a trial court's abuse of its discretion would justify disturbing its ruling to grant or deny a motion for continuance).

More specifically, in *Cornwell v. Commonwealth*, 523 S.W.2d 224, 227 (Ky. 1975), we held that the refusal of a trial court to grant a continuance on account of an absent witness will not be disturbed unless there is a clear showing of an abuse of discretion in denying the continuance.[3]

---

3. "[T]he test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Miller v. Eldridge*, 146 S.W.3d 909, 914 (Ky.2004).

With respect to the RCr 9.04 requirement that motions to continue due to absent witnesses be made upon affidavit, we have held a trial court did not err in denying a motion to continue where the defendant failed to make a supporting affidavit showing what the witness would say, as the failure deprived the trial court of any basis on which it could have judged the merits of the motion and deprived the reviewing court of any basis on which it could determine if the ruling was prejudicial. *Pennington v. Commonwealth,* 371 S.W.2d 478, 479 (Ky.1963). *See also United States v. Foster,* 128 F.3d 949 (6th Cir.1997) (holding that to justify a continuance for purposes of locating a witness, the moving party must show that the witness would have given substantial favorable evidence and that the witness was available and willing to testify). It is not error to deny a continuance where the affidavit does not comply with the provisions of RCr 9.04. *McFarland v. Commonwealth,* 473 S.W.2d 121, 122 (Ky.1971).

The Appellant's trial counsel addressed the court stating his unpreparedness for the penalty phase in that his character witness was not present. At no point did counsel make a proper motion for continuance as required by RCr 9.04. The trial counsel failed to show upon affidavit what the witness would say. He failed to establish that the witness would give substantial favorable evidence. Thus, the trial court properly denied counsel's request that the penalty phase be continued. Simply put, there was no abuse of discretion.

## III. COMMONWEALTH'S VOIR DIRE COMMENTS

The Appellant's third claim of error is that the trial court erred by failing to admonish the jury that the prosecutor represented the state, not the victim, after the attorney for the Commonwealth asked the jury if they believed the victim also deserved a fair trial and a "day in court." The Appellant argues the questions constituted prosecutorial misconduct which effectively denied him a fair trial.

Upon this questioning by the Commonwealth, counsel for the Appellant lodged an objection. The judge stated that she was troubled by the questioning and the Commonwealth should move on but stated she would not give an admonition. The questioning resumed, along other lines, without any further objections or requests for relief by the Appellant.

It is not necessary, however, for the Commonwealth to exclude mention of the victim of a crime or for the victim to be dehumanized in order to ensure the defendant gets a fair trial. The Commonwealth is the representative of the "people" and represent their interests, including the interests of the victims. A fair trial for one, is a fair trial for all. These are not two different standards—they are the same.

In *Bowling v. Commonwealth,* 942 S.W.2d 293, 302–03 (Ky.1997), this Court held that the jury may receive an "adequate ... description of the victim as long as the victim is not glorified or enlarged." The victim of a homicide "can be identified as more than a naked statistic" and the defendant is not unduly prejudiced by the identification of the victim as a human being. *Id.* In *Bowling,* we cited *Payne v. Tennessee,* 501 U.S. 808, 827, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991) (overruling two recent cases, both of which had held the admission of "victim impact evidence" in a capital trial was a per se violation of the Eighth Amendment), quoting former Justice Cardozo who said, "*Justice that is due to the accused is due to the accuser also.* The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true." *Payne,* 501 U.S. at 827, 111 S.Ct. at

2609, *cited in Bowling,* 942 S.W.2d at 303 (emphasis added). The Court further stated in *Payne* that "the harm inflicted upon the families, loved ones, and community of the slain victim is an integral element in the assessment of the criminal's blameworthiness." *Payne,* 501 U.S. at 827, 111 S.Ct. at 2609.

 Because we have long held as a cornerstone of our jurisprudence that the prosecution "represents all of the people of the Commonwealth," *Goff v. Commonwealth,* 241 Ky. 428, 44 S.W.2d 306, 308 (1931), we are not persuaded that the question during voir dire of the victim "receiving a fair trial" was fundamentally unfair.[4] The Commonwealth first referred to the Appellant's right to a fair trial and then suggested that the trial be fair to all those involved. We do not believe the Commonwealth's question and the court's response thereto constitute error. For the sake of argument, even if we found this to be error, it would be harmless as it did not affect the substantial rights of the Appellant, or the overall fairness of the trial.

### IV. *PEREMPTORY STRIKE OF JUROR 764*

The Appellant's fourth claim of error arises from the Commonwealth's peremptory strike of Juror 764. The Appellant argues the Commonwealth struck the juror for discriminatory purposes in violation of *Batson v. Kentucky,* 476 U.S. 79, 96–98, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In evaluating this claim in light of the *Batson* three-step process, we find no error. *Id.*

 The trial court, sua sponte, required both the Commonwealth and trial counsel for the Appellant to disclose any jurors selected for peremptory strikes who were African–American (and female) and to explain their reasoning for the strikes.

Regarding his strike of Juror 764, the attorney for the Commonwealth stated that the juror lived in a high-crime area and that her participation in the trial would put her in a "tight spot." Appellant objected, stating that the prosecutor did not offer a nondiscriminatory reason. The trial judge accepted the prosecutor's explanation as race-neutral and overruled the objection.

Ordinarily, the Appellant would bear the initial responsibility under *Batson* to make a *prima facie* showing of purposeful discrimination by the Commonwealth in the exercise of its peremptory strikes. This Appellant's duty, however, was rendered moot by the trial court's request for explanation and ruling on the strike and so we need not tarry on this issue. *Commonwealth v. Snodgrass,* 831 S.W.2d 176, 178 (Ky.1992) (citing *Batson,* 476 U.S. at 96–98, 106 S.Ct. at 1722–1724).

 Once the *prima facie* showing was made, or as in this case, the trial court made a request for explanation, the Commonwealth, according to *Batson,* then bore the burden of offering its "race-neutral" reason for striking Juror 764 (i.e., Juror 764 lived in a high-crime area). *Batson,* 476 U.S. at 80, 106 S.Ct. at 1714. Once the Commonwealth gave its reasoning and such was acceptable to the trial court, the burden shifted to the Appellant to rebut the neutrality of the reasoning. The Appellant objected to the strike as not based on nondiscriminatory grounds, but failed to offer any further argument or evidence of purposeful discrimination.

 "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral." *Hernandez v. New York,* 500 U.S. 352, 360, 111 S.Ct. 1859, 114

---

**4.** The victim is the central reason for the trial.

L.Ed.2d 395 (1991). We are, thus, not persuaded that the Appellant met his subsequent burden to provide further evidence on which the trial court could determine the Commonwealth's peremptory strike to be discriminatory. *See e.g. United States v. Uwaezhoke*, 995 F.2d 388, 394 (3d Cir.1993) (holding that a prosecutor may rationally believe that a juror who lives in a bad neighborhood may fear retaliation for her verdict or she may have had unpleasant contact with police). Because the trial court is the best "judge" of the Commonwealth's motives in exercising its peremptory strikes, great deference is given to the court's ruling. *See Wells v. Commonwealth*, 892 S.W.2d 299, 303 (Ky. 1995) (the trial court is in the "best position" to determine the true intent behind the Commonwealth's peremptory challenges); *Snodgrass*, 831 S.W.2d at 179 (the trial court may "accept at face value" the explanation given by the prosecutor for his strikes, depending on his "demeanor and credibility). The trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference," *Wells*, 892 S.W.2d at 303, and must be accepted unless they are clearly erroneous. *Stanford v. Commonwealth*, 793 S.W.2d 112, 114 (Ky.1990). The trial court's determination in this case deserves no less deference and we find no reason to disturb its ruling.

Although the dissent takes issue with both the reason proffered by the Commonwealth as well as the trial court's acceptance of living in a high crime area as being race-neutral, we note that the Commonwealth's attorney in this case peremptorily struck a total of nine jurors. Of those nine, four were African–American. The Commonwealth offered as justification for the other three jurors struck that two of them were "church friends" of defense counsel, and the third had been represented by defense counsel on a prior occasion.

In short, the Commonwealth found it necessary to strike only one African–American juror on the basis of where that juror lived. While we make no finding as to the veracity of the reason proffered, we do note that three African–American jurors were left in the remaining juror pool, and of those three, two actually served on the jury, which found Appellant guilty as charged. Under these circumstances, we cannot find error in the trial court's decision.

## V. *PRIOR BAD ACTS*

■ During the trial testimony of Detective Williams, the Commonwealth played Appellant's taped statement wherein he mentioned being in jail and on probation. Despite the Commonwealth's agreement to turn down the volume during specific references to his criminal history, the jury inadvertently heard additional references to the Appellant's criminal past (jail and probation). The Appellant moved for a mistrial. Though the motion was overruled, the trial court offered a curative admonition which was accepted and given. The Appellant now claims the trial court erred in denying his motion for mistrial. We disagree.

■ Though evidence of "prior bad acts" is generally inadmissible, KRE 404(b), this Court has long held that an admonition is usually sufficient to cure an erroneous admission of evidence and there is a presumption that the jury will heed such an admonition. *Matthews v. Commonwealth*, 163 S.W.3d 11, 17 (Ky.2005). And it is the trial court who is the best position to determine the necessity of a mistrial. *Id.*

■ In this case, the trial court determined that the "harmful" references did not rise to the level that could only be

cured by a mistrial and was obviously satisfied that the admonition was sufficient. The trial court's decision to deny the Appellant's motion for mistrial should not be disturbed absent an abuse of its discretion. *Id.*

Because the Appellant has not provided any grounds to suggest that the reference to the Appellant's criminal past was not cured by the court's admonition [5], we find no error.

## VI. *DIRECTED VERDICT*

As his final claim of error, the Appellant argues that, under the evidence presented, it was clearly unreasonable for the jury to convict him of murder. Appellant argues that the Commonwealth's evidence was so contradictory that no reasonable juror could convict him of the murder of Andrea Tiller. We disagree.

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony. On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

*Commonwealth. v. Benham* 816 S.W.2d 186, 187 (Ky.,1991) (citing *Commonwealth v. Sawhill,* 660 S.W.2d 3 (Ky.1983)).

The Appellant argues that the inconsistencies in the testimonies of the Commonwealth's witnesses entitle him to a directed verdict. The inconsistencies in the testimonies, however, were introduced by the Commonwealth as prior inconsistent statements and are admissible at trial pursuant to KRE 801A(a)(1).

In applying the standard set forth in *Benham* and its progeny, the trial court properly overruled the Appellant's motion for directed verdict, leaving the question of weight and credibility to the jury. *E.g. Commonwealth v. Smith,* 5 S.W.3d 126 (Ky.1999); *Webb v. Commonwealth,* 904 S.W.2d 226 (Ky.1995); *Bush v. Commonwealth,* 457 S.W.2d 495 (Ky.1970). In reviewing this issue in light of *Benham* and *Sawhill,* we do not find it unreasonable for the jury to have found guilt.

For the foregoing reasons, we affirm the judgment of the Fayette Circuit Court.

GRAVES, ROACH and WINTERSHEIMER, JJ., concur.

MINTON, J., concurs by separate opinion.

McANULTY, J., concurs in part and dissents in part by separate opinion, with LAMBERT, C.J., joining that opinion.

MINTON, Concurring Justice.

I concur with the majority's conclusion that Gray's conviction should be affirmed. But I write separately because I view Gray's argument regarding the reciprocal discovery agreement differently and because I share many of the concerns expressed in the dissent.

## A. The Discovery Violation.

I disagree with the majority's conclusion that the pretrial discovery agreement only

---

**5.** See *Graves v. Commonwealth,* 17 S.W.3d 858, 865 (Ky.2000).

required Gray to share the results of scientific tests under RCr 7.24(3)(A)(i). Because the majority takes this narrow view of the parties' pretrial discovery agreement, the majority undertakes an extensive analysis of RCr 7.24. Such detailed scrutiny is unnecessary.

I believe the pretrial discovery agreement was broad in scope, as evidenced by the fact that it states that "the Defendant [Gray] agrees to provide reciprocal discovery[.]" So, unlike the majority, I believe that the trial court correctly found that Gray breached the agreement when he failed to share the taped statements with the Commonwealth. And I believe that the trial court had broad authority to fashion the appropriate remedy for this breach, regardless of whether the taped statements fit nicely into any specific subsection of our criminal rules. Under RCr 7.24(9), a trial court has the inherent discretion to fashion a remedy when a discovery rule has been violated. Under our settled jurisprudence, we may only disturb a trial court's remedy if that remedy represents an abuse of discretion.[1] Under the circumstances of this case, I do not believe that the trial court abused its discretion.

The parties clearly envisioned reciprocal discovery. And there is no indication that the Commonwealth failed to abide by that agreement. Additionally, the trial court, which was surely in the best position to judge the parties' intent, also must have believed that the parties intended to provide broad reciprocal discovery because the trial court did not engage in the RCr 7.24 analysis undertaken by the majority.

I conclude that the trial court did not abuse its discretion by prohibiting Gray from introducing evidence that he had not disclosed to the Commonwealth. The trial court's ruling merely held Gray to the terms of his voluntary agreement.[2]

I also respectfully suggest that the majority's discussion of harmless error and invited error is unnecessary. When the trial court ruled that Gray could not impeach Crutcher or Eggerson with a specific inquiry into their prior statements, it concurrently allowed Gray to ask Crutcher or Eggerson whether they recalled making those statements. But Gray's counsel did not accept the trial court's invitation to ask either Crutcher or Eggerson whether they recalled making the statements at issue. So the propriety of the exclusion of those statements is not preserved for our review.[3]

1. *See, e.g., St. Clair v. Commonwealth,* 140 S.W.3d 510, 549 (Ky.2004) ("[h]ere, the trial court prohibited the Commonwealth 'from introducing in evidence the material not disclosed,' and we find no abuse of discretion in the trial court's choice of remedy for the Commonwealth's discovery violation.").

2. *See, e.g., Hicks v. Commonwealth,* 805 S.W.2d 144, 149 (Ky.App.1990) (holding that the Commonwealth was obligated to abide by its announced "open file" discovery policy even without a discovery order issued by the court); *United States v. Atisha,* 804 F.2d 920, 924 (6th Cir.1986).

3. *Commonwealth v. Ferrell,* 17 S.W.3d 520, 525 (Ky.2000) ("[a]n appellate court simply cannot address admissibility and prejudice is-sues in a vacuum, and RCr 9.52 provides parties with a procedure which allows them to include within the record the words of their witnesses so that appellate courts can review their claims. Based on the record before us in this case, we [cannot] determine whether the trial court erred in sustaining the Commonwealth's objection, and we certainly [cannot] make any meaningful determination of how any error prejudiced the defendant in light of the other evidence admitted at trial. Accordingly, we reaffirm our holding in *Partin [v. Commonwealth,* 918 S.W.2d 219 (Ky. 1996) ] that a party must offer an avowal *by the witness* in order to preserve for appellate review an issue concerning the exclusion of evidence.").

## B. The *Batson* Issue.

I support Justice McAnulty's contention that residents of high crime areas may have as much, if not more, interest in serving as jurors in criminal cases than do residents of so-called "safe" neighborhoods. And I am troubled by the paternalistic thinking reflected in the Commonwealth's invocation of Juror 764's residence in a high crime area as possibly putting her in a "tight spot" as its reason for striking her. She, unlike others in the venire, did not respond to the Commonwealth's voir dire question asking if any of them were afraid to sit on the case. My concern is deepened by the fact that the Commonwealth made no discernible effort to link Juror 764 in any way to the facts of the case. But despite my concerns, I must ultimately disagree with Justice McAnulty's conclusion that reversible error occurred here.

Whether Gray made the requisite prima facie showing under *Batson v. Kentucky*[4] is a moot point since the Commonwealth offered a response to the *Batson* inquiry.[5] And the burden was on the Commonwealth to state a race-neutral reason for exercising the peremptory challenge to Juror 764.[6] On its face, the Commonwealth's response regarding Juror 764's residence in a high-crime neighborhood has nothing to do with that juror's race.[7]

Although the Commonwealth's proffered race-neutral reason for striking Juror 764 was not specifically related to the charges against Gray, as required by *Batson*, that factor, standing alone, does not require reversal. Rather, a lack of a relationship between the residence of the prospective juror and the facts of the case to be tried is one factor that a trial court can take into account in determining if the prosecution's stated reason for the strike is race-neutral.[8] Thus, I disagree with the conclusion reached by the dissent that the lack of a connection between Juror 764's place of residence and Tiller's death requires reversal of Gray's conviction.

Having found that the Commonwealth's proffered reason was, on its face, race-neutral, the final step was for the trial court to determine if the Commonwealth's race-neutral reason was actually a pretext for racial discrimination. Although he now argues that pretext is inherent in the Commonwealth's proffered reason, Gray does not show where he made that argument before the trial court.

The trial court made its ruling facing a situation in which the Commonwealth's proffered reason for striking a juror was facially race-neutral and the defense did not challenge the Commonwealth's assertion by offering to present historical or anecdotal proof.[9] From the vantage point

---

4. 476 U.S. 79, 98, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

5. *Commonwealth v. Snodgrass*, 831 S.W.2d 176, 179 (Ky.1992).

6. *Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) ("[a]t this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.") (plurality opinion).

7. *See, e.g., Taitano v. Commonwealth*, 4 Va. App. 342, 358 S.E.2d 590, 593 (1987) (specifically holding that prosecution's exercise of peremptory challenges because, among other reasons, prospective jurors lived in "high crime" areas was race-neutral).

8. *Boyde v. Brown*, 404 F.3d 1159, 1171 n. 10 (9th Cir.2005).

9. Indeed, Gray's brief does not show how many total peremptory challenges the Commonwealth used to remove African-Americans or how many African-Americans actually sat on the jury. A review of the record,

of an appellate panel, we perhaps could differ as to whether the Commonwealth's explanation for striking Juror 764 was a pretext for racial discrimination. But I cannot find that the trial court's ruling, which necessarily had to be made on-the-spot, was clearly erroneous [10] in light of the fact that the trial court was "in the arena," [11] and, thus, was uniquely positioned to judge the Commonwealth's demeanor and motives.[12] Although I share many of Justice McAnulty's concerns, I do not believe that the trial court clearly erred when it found that Gray did not meet his burden to show that the Commonwealth's peremptory strike of Juror 764 was racially motivated.[13] Accordingly, I concur with the majority's conclusion that no *Batson*-related reversible error occurred in this case.

McANULTY, Justice, Opinion Concurring in Part, and Dissenting in Part.

While I concur in the other parts of the majority opinion, I respectfully dissent as to the peremptory strike of Juror 764.

While we are to afford trial courts deference in their determination of the issue of discriminatory intent, I believe the trial court did not effectively weigh whether the reason offered was pretextual. In the third phase of the *Batson v. Kentucky* analysis, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the trial court has the duty to weigh the reason proffered as it would any fact in issue to determine if purposeful discrimination has been shown. *Washington v. Commonwealth,* 34 S.W.3d 376, 379 (Ky.2000). Defense counsel pointed out that the reason proffered by the Commonwealth was not non-discriminatory.

In this case the trial court informed counsel that they needed to discuss their strikes. The Commonwealth Attorney's gave as his reason for striking Juror 764: "She lives on Ward Drive. Our experience is that's a high crime area. Whether she said she was fearful or not, I think that this puts her in a tight spot, so I struck her. Thought it would affect her." The Commonwealth's Attorney finished detailing his peremptory strikes, and informed

---

however, shows that the Commonwealth exercised nine peremptory strikes, four of which were used for African–Americans. Ultimately, two African–Americans served on the jury that found Gray guilty.

10. *Stanford v. Commonwealth,* 793 S.W.2d 112, 114 (Ky.1990) (applying the clearly erroneous standard to a trial court's findings concerning a *Batson* challenge).

11. "It is not the critic who counts: not the man who points out how the strong man stumbles or where the doer of deeds could have done better. The credit belongs to the man who is actually in the arena, whose face is marred by dust and sweat and blood, who strives valiantly[.]" Theodore Roosevelt, "Citizenship in a Republic," Speech at the Sorbonne, Paris, April 23, 1910 (as noted at *http://www.theodoreroosevelt.org/life/quotes. htm*).

12. *Hernandez,* 500 U.S. at 365, 111 S.Ct. 1859 ("[i]n the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province.") (internal quotation marks and citation omitted).

13. *Thomas v. Commonwealth,* 153 S.W.3d 772, 777 (Ky.2004) (quoting *Purkett v. Elem,* 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)) ("the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.").

defense counsel that four of his nine strikes were African–American jurors. Defense counsel then stated, "We struck one because she lives on Ward Drive." The Commonwealth's Attorney responded affirmatively. Defense counsel stated, "I don't think that's a good enough reason for that one." The court interjected, "You just have to articulate a non-discriminatory reason. And I don't think we can second guess trial strategy. He thinks she lives in an area ..." Defense counsel interrupted, "What I'm saying is that I don't think that's a non-discriminatory reason, the fact that she lives on Ward Drive. Any of these people might live in a crime area or anything like that. We don't know whether any one of them live in a crime area." The Commonwealth's Attorney started to assert his knowledge of the Ward Drive area, when the trial court stated, "I'm overruling your objection."

I would find the trial court's determination clearly erroneous. I believe courts need to pay substantially greater attention to whether the mere claim that a person lives in a high crime area is being used as a pretext for discrimination against blacks in jury selection. I take issue with that justification as race-neutral in this case because it was unconvincing in three ways.

First, the prosecutor in this case offered no justification for why living in a high crime area should have any bearing on serving as a juror. Citizens who live in high crime areas can have just as much, if not more, interest in sitting on panels in criminal cases as jurors who experience no crime in their neighborhoods. It is stereotypical to assume that those who live in high crime areas are more likely to condone bad acts. Particularly is this true when attitudes can be explored in voir dire rather than assumed.

If conducted properly, voir dire can inform litigants about potential jurors,

making reliance upon stereotypical and pejorative notions about a particular gender or race both unnecessary and unwise. Voir dire provides a means of discovering actual or implied bias and a firmer basis upon which the parties may exercise their peremptory challenges intelligently. *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 143–144, 114 S.Ct. 1419, 1429, 128 L.Ed.2d 89 (1994). The residence of a potential juror in a high crime area is not persuasive on its own. There was no attempt by the prosecutor to tie the reason for the peremptory strike to the facts of this case. The prosecutor must "articulate a neutral explanation *related to the particular case to be tried.*" *Batson,* 476 U.S. at 98, 106 S.Ct. at 1724, 90 L.Ed.2d at 88 (emphasis supplied). The prosecutor did not assert that the area in which the juror lived was the same area in which the crime in this case occurred. Further, there was no suggestion that the juror had any involvement in criminal activity. This basis does not bear up under reasonable scrutiny, and thus courts should be wary as to whether it is being used as pretext.

Second, there is the inference that the prosecutor's strike is beneficial to the juror because she needed protection from possible retaliation because of living in a high crime area. The majority cites *United States v. Uwaezhoke,* 995 F.2d 388, 394 (3rd Cir.1993), for the proposition that the prosecutor may believe that the juror may fear retaliation for her verdict. (Opinion at p. 16) Of course, there will be instances where this is so. But it is not the job of peremptory strikes to provide for this. To begin with, this subject should be explored in voir dire rather than guessed at or assumed. Then, it is for the court or for the parties to use their strikes for cause to avoid seating a juror in a particular case who feels threatened. In this case, the

juror never expressed reservations about sitting on the jury. The prosecutor asked a general question about whether any of the jurors had any fear about sitting on a murder case, to which juror 764 made no response. The prosecutor did not explore juror 764's feelings about serving on the case and again never established that the area where the juror lived had any connection to the crime in the case at bar.

Third, merely accepting high-crime neighborhood as a race-neutral reason for a strike ignores African–American housing patterns, particularly in our Commonwealth's largest cities. This creates the opportunity for the mere assertion that the juror lives in a high crime area to draw more black juror candidates into an effective exclusion from juries. The prosecutor must present a comprehensible reason in the second step of the *Batson* inquiry, and that explanation need not be "persuasive, or even plausible" so long as the reason is not inherently discriminatory. *Purkett v. Elem,* 514 U.S. 765, 767–768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). I believe in some circumstances, merely citing a neighborhood in which the juror lives will represent purposeful discrimination due to the African–American housing pattern of that community. For all of these reasons, I believe that it was clearly erroneous for the court to accept the explanation for the strike as race-neutral. Our Court and the trial courts of this Commonwealth should scrutinize explanations for peremptory strikes based on neighborhood alone.

LAMBERT, C.J., joins in this opinion.